MOYER v. PEABODY et al.

(Circuit Court, D. Colorado. November 19, 1906.)

No. 4,707.

1. COURTS—JURISDICTION OF UNITED STATES COURTS—ACTIONS AGAINST STATE OFFICERS—USE OF MILITIA.

Article 4, § 5, of the Constitution of Colorado, which makes the Governor the commander in chief of the militia of the state, and authorizes him to call out the militia to execute the laws, suppress insurrection and repel invasion, and Colo. Sess. Laws 1897, p. 204, c. 63, which provides more in detail for the exercise of such power, are not in conflict with the fourteenth amendment to the federal Constitution, as authorizing

any action in violation of personal rights, but are clearly within the powers of the state, and to give a federal court jurisdiction of an action against officers of the state to recover damages for acts done as claimed under authority of such provisions as in violation of constitutional rights defendants must be alleged to have been guilty of a wanton abuse of the power thereby conferred.

[Ed. Note.—For cases in point, see Cent. Dig., vol. 13, Courts, §§ 820, 823.]

2. MILITIA—AUTHORITY TO USE—EXERCISE OF EXECUTIVE POWER—REVIEW BY THE COURTS.

Whether or not a state of insurrection exists in a locality requiring the use of the military of the state is a question to be determined by the executive department of the state, and when so determined its decision cannot be inquired into or reviewed by the courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Militia, § 6; vol. 10, Cent. Dig. Constitutional Law, § 133.]

3. SAME—LIABILITY OF MILITARY OFFICERS—DISCRETIONARY POWER IN CASE OF INSURRECTION.

Where a state of insurrection has been declared in a locality by the Governor of a state and the military authority is being used to restore and maintain order, officers engaged in the military service may lawfully arrest and detain any one who, from the information before them, they have reasonable ground to believe is engaged in such insurrection, and they cannot be made liable civilly for an unintentional error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Militia, § 44.]

At Law.   On demurrer to complaint.

The plaintiff alleges in the declaration that he is a citizen of the United States, and a citizen and resident of the state of Colorado; that the defendants also are citizens of the United States, and citizens and residents of the state of Colorado; that he "brings this action in this court against said defendants under the Constitution of the United States, and under section 1979 of the Revised Statutes of the United States by reason of the fact, as will more fully appear hereinafter in this complaint, that the defendants, under color of the Constitution of Colorado, and the laws thereof, subjected this plaintiff to the deprivation of rights, privileges and immunities secured to him by the Constitution and laws of the United States"; that the defendant, Peabody, was elected Governor of said state in November, 1902, for a term of two years, beginning January 13, 1903; that the defendant, Bell, was appointed adjutant general of the National Guard of the state of Colorado, and the defendant, Wells, was appointed captain of a company in said guard by the defendant Peabody, as Governor; that the defendant Peabody, as commander-in-chief of the said militia, and the defendant Bell, as adjutant general, directed and caused a portion of the said National Guard of Colorado to assemble in the city of Telluride, San Miguel county, Colorado; that, while so assembled, said guard was under the direction, orders and control of the defendant Peabody, as commander-in-chief, and the defendant Bell, as adjutant general, and the defendant Wells, as captain; that on March 30, 1904, the defendants, acting as officers of said National Guard, gave directions to, and caused a squad of men, being a part of said National Guard, to arrest the plaintiff and imprison him in the city jail in the town of Telluride; that the plaintiff was confined and kept, forcibly and against his will, from March 30, 1904, until June 15, 1904, and with force and arms was restrained of his liberty and subjected to hardships, privations, humiliation, and disgrace; that the defendants claimed the right to arrest and detain the plaintiff by virtue of their being officers of the state of Colorado, and under the laws of Colorado, to wit, section 2 of article 4 of the Constitution of Colorado, which is as follows: "The supreme executive power of the state shall be vested in the Governor, who shall take care that the laws shall be faithfully executed." And section 5 of article 4 of said Constitution, as follows: "The Governor shall be commander-in-chief of the military forces of the state, except when they shall be called into

actual service of the United States. He shall have power to call out the militia to execute the laws, suppress insurrection and repel invasion"; that defendants claimed other statutes of Colorado gave them also the right to arrest, imprison, and detain the plaintiff, but that plaintiff is unable to find said statute; that after the arrest and detention of the plaintiff by the defendants he made application to the Supreme Court of the state of Colorado, the highest court and court of last resort in said state, for a writ of habeas corpus, in which application the plaintiff asserted that he was deprived of his liberty contrary to the laws of the state of Colorado, and of the laws of the United States, and said court allowed the writ to issue. That in their return to said writ Peabody, Bell, and Wells did not claim that the courts of said state, or in any part of said state, were overthrown and that a trial could not be had to determine any charge of crime made against the plaintiff; that Adjutant General Bell, in his return to the writ, asserted that he was the adjutant general of the National Guard of Colorado; that the Governor of Colorado had given him orders to arrest and detain the plaintiff, and not to release him under any circumstances until further orders from the Governor; that the said Wells was at the time a subordinate military officer under the direct command of said Bell, and the defendant Peabody certified to the correctness of said statement in Bell's return to the writ; and the said Peabody also stated that he was acting in his official capacity under the laws of Colorado relating to the arrest, detention, and imprisonment of the said Moyer; that the Supreme Court of the state of Colorado refused to admit Moyer to bail, and finally rendered a judgment in said habeas corpus proceedings to the effect that the Governor of the State, and the other respondents therein might, as officers of the state of Colorado, under the authority vested in them under the Constitution and the sections above quoted, and the statutes of said state, hold and detain said Moyer until, in their judgment, they saw fit to release him; that this was deprivation of liberty without due process of law; that by the acts and decisions of said Supreme Court plaintiff cannot obtain in the courts of Colorado any redress for the wrongs so inflicted upon him; that said decision is contrary to the provision of the Constitution and the laws of the United States relative to personal rights; that the arrest and imprisonment of the plaintiff was without probable cause and without legal process or color thereof, and not in due course of law; that the conduct of the defendants was in disregard of the rights of the plaintiff, guaranteed to him by the Constitution and the laws of the United States; that the plaintiff was a law-abiding citizen; that he was not a member of the National Guard of the state of Colorado; that at no time during his imprisonment was he accused of the commission of a crime, by complaint under oath lodged in any court of competent jurisdiction; that he was prevented from having access to the courts, and from the privilege of demanding in any court the nature of the cause of the accusation under which he was held. He asks damages.

To this declaration the defendants have filed demurrer, for that, because: (1) This court has no jurisdiction of the action; (2) the declaration does not state facts sufficient to constitute a cause of action against the defendants, or either of them; (3) that the matters in controversy herein are res adjudicata, and in aid thereof the demurrants crave oyer of the record and opinion of the Supreme Court of this state in the habeas corpus proceeding above referred to.

On argument of the demurrer it was agreed that the proceedings of the Supreme Court of Colorado in the habeas corpus case should be considered on the issue raised by the demurrer.

Record in habeas corpus case: The petition for the original writ of habeas corpus, filed in the Supreme Court of Colorado on April 15, 1904, sets forth a proclamation issued by the defendant, James H. Peabody, as Governor, on March 23, 1904, wherein it is proclaimed and declared that the county of San Miguel in the state of Colorado, is in a state of insurrection and rebellion, by reason of the fact, as therein recited, that armed bodies of men, both within and without said county, acting in conjunction, and about to unite, had threatened violence to the citizens of said county, and destruction of property. It further appears from the petition that said Governor, on the day of issuing said proclamation, by written order, directed the defendant Bell, as adjutant general, to order out such troops as, in his judgment, necessary, and to report

forthwith to the sheriff of said San Miguel county, and that he use such means as may be necessary, acting either in conjunction with or independent of the civil authorities, to restore peace and good order in said community, and to enforce obedience to the Constitution and laws of the state. It is then alleged that about three hundred men, constituting a portion of the National Guard, proceeded to occupy the city of Telluride.

The return to the writ of habeas corpus appears to have been filed on April 21, 1904. The adjutant general therein asserted that the insurrection and rebellion was at that time flagrant in San Miguel county; that ever since the National Guard had reached Telluride, it had been active in the attempt to suppress said state of insurrection, and to restore peace and good order in said county, and that it had acted independently of the civil authorities because said authorities were found to be wholly powerless to render any aid whatsoever in that behalf; that after arriving at Telluride, said adjutant general had good reason to believe, and did believe in good faith, and upon due inquiry in the premises became personally and officially fully satisfied and convinced, that the petitioner, Charles H. Moyer (plaintiff here), had been, and if discharged from arrest would continue to be an active participant in fomenting and keeping alive the said condition of insurrection and rebellion, and that he was a prominent leader of bands of lawless men engaged in the acts of insurrection and crimes mentioned in the Governor's proclamation, and that in order to accomplish the suppression of said state of insurrection it was necessary, in the judgment of the Governor and the adjutant general, to arrest, detain, and for some time to come, restrain the body of the said Charles H. Moyer, and that said Moyer was restrained solely for that purpose, and that he would be released from custody as soon as the same could safely be done, with reference to the suppression of the existing insurrection and rebellion.

Governor Peabody was permitted to interpose and file a confirmation of the facts set forth in the return of the adjutant general, and in addition thereto he disclosed to the Supreme Court a communication addressed to him as Governor, of date March 23, 1904, signed by county officials, including the sheriff of San Miguel county, city officials and a number of private citizens, wherein they represented to the Governor that a reign of riot and lawlessness was at that time imminent; that the mob was then arming itself, and that the persons who were in charge of said mob were the same persons who had theretofore within said county committed numerous acts of violence, some of which had resulted in murder and destruction of property; that the civil authorities were unable to suppress the same and provide safety to persons and property in said county; that great loss of life and sacrifice of property would likely result unless immediate and decisive action be taken, through the military authorities, to suppress it.

The petitioner filed a reply to the return to the writ in which he denied that a state of insurrection, or rebellion, existed in San Miguel county on March 23d, or at any other time, but he alleged that shortly before that time a certain organization, called the Citizens' Alliance, was perfected for the purpose of controlling the miners of that county, and that shortly before said March 23d, they organized a mob and deported about seventy men who had theretofore been miners; that these miners announced their intention of returning, and that they would resist any further interference with their persons or any attempts to redeport them; that those who signed the petition to the Governor aided in deporting said miners; that said acts were a part of a conspiracy entered into by the members of the Citizens' Alliance, as against the miners; denied that plaintiff took any part in fomenting said troubles; alleged that he was the then president of the Western Federation of Miners, and that he discountenanced all acts of lawlessness on the part of those belonging to said federation, and that said federation was a law-abiding, peaceable, conservative and law loving organization, existing for the purpose of bettering the social and financial condition of its members; that the civil authorities were amply able to deal with the situation.

The Colorado statutes (Sess. Laws 1897, c. 204, c. 63) empower and direct the Governor to use the National Guard to repel or suppress an invasion or insurrection when made or threatened, and the act further provides for calling out the Guard for that purpose, and the mode of putting it in operation.

Richardson & Hawkins, for plaintiff.
John M. Waldron, for defendants.

LEWIS, District Judge.    There is nothing on the face of the above provisions of the Colorado Constitution which brings it in conflict with the fourteenth article of amendment to the Constitution of the United States, and the complaint here may be said to be against the manner of enforcing said provisions.    It is true that if state officers, in the exercise of their official authority, deny to any citizen the guaranties found in said amendment, it is the state itself which does it, and such acts, therefore, come within the constitutional prohibitions.    Ex parte Virginia, 100 U. S. 313, 25 L. Ed. 667; Railway Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979; Reagan v. Trust Co., 154 U. S. 390, 14 Sup. Ct. 1047, 38 L. Ed. 1014.    The officer, however, must claim to act under authority conferred upon him by the statute, and be guilty of an abuse of power, if the legislative act is not subject to the criticism.

It is obvious that the provisions above quoted from the Constitution of Colorado are but the enunciation of a sovereign power, a power founded on necessity and inherent in every government.    It is sometimes likened to that of self-defense.    "The life of governments is like that of a man; the latter has a right to kill, in case of natural defense; the former have the right to wage war for their own preservation."    It is the declaration of the right of self preservation and finds recognition in every Constitution, both national and state.    It is properly invoked in all governments to repel invasion by foes without, and to suppress rebellion or insurrection by enemies or powerful disturbers of the peace within.    Unless this right and power exist, peace, good order, security—government itself—may be destroyed and obliterated by internal strife and lawlessness, when the domination of the mob becomes so powerful that it cannot be stayed by the civil authorities.    This power in the state was recognized by the national government on receiving the state into the Union with the above provisions in its constitution.    The provision in section 4 of article 4 of the U. S. Constitution guaranties every state against violence.    The national government possesses the same right and power, as declared in section 8 of article 1 of its Constitution.

These fundamental principles were not seriously questioned on argument, but the contention was that the plaintiff has a right to go to the country on the issue of fact:    Did insurrection exist?

1. Judicial tribunals presuppose the existence of a civil state, hence governmental integrity is, ex necessitate, a political question and not a judicial one.    This principle was recognized and announced in Philips v. Hatch, 1 Dill. 571, Federal Cas. No. 11,094.

In U. S. v. 129 Packages, Federal Cas. No. 15,941, Judge Treat, in discussing the respective powers of the executive and judicial departments of the government in treating with and suppressing insurrection, said:

"The condition of peace or war, public or civil, in a legal sense, must be determined by the political department, not the judicial.    The latter is bound

by the decision thus made.  *  *  *  The same doctrine has been uniformly maintained from the commencement of the government. The absurdity of any other rule is manifest. If, during the actual clash of arms, courts were rightfully hearing evidence as to the fact of war, either with or without the aid of juries determining the question, they should have power to enforce their decisions. In case of foreign conflicts neither belligerent would be likely to yield to the decision; and in case of insurrection, the insurgents already in arms against the Constitution and laws, would not cease their rebellion in obedience to a judicial decree. In short, the status of the country as to peace or war, is legally determined by the political and not the judicial department. When the decision is made the courts are concluded thereby, and bound to apply the legal rules which belong to that condition. The same power which determines the existence of war or insurrection, must also decide when hostilities have ceased—that is, when peace is restored. In a legal sense, the state of war or peace is not a question in pais for courts to determine. It is a legal fact ascertainable only from the decision of the political department."

In Keely v. Sanders, 99 U. S. 441, at page 446, 25 L. Ed. 327, Mr. Justice Strong, in delivering the opinion of the court said:

"Further than this, whether the military authority had been established in Shelby county before the commissioners entered upon the discharge of their duties, is a political question, to be answered by the executive branch of the government, and not by the courts. In its nature it was incapable of being determined by the latter. Successive juries might give to it different and contradictory answers."

In the noted case of Luther v. Borden, 7 How. 1, 12 L. Ed. 581, Mr. Justice Taney, after adverting to the principle that it is not a judicial but an executive function to determine when an insurrection exists, added:

"Yet if this right does not reside in the courts when the conflict is raging, if the judicial power is at that time bound to follow the decision of the political, it must be equally bound when the contest is over. It cannot, when peace is restored, punish as offenses and crimes the acts which it before recognized, and was bound to recognize, as lawful."

In re William Boyle (Idaho) 57 Pac. 706, 45 L. R. A. 832, it was held:

"On application for writ of habeas corpus, the truth of the recitals of alleged facts in a proclamation issued by the governor proclaiming a certain county to be in a state of insurrection and rebellion, will not be inquired into or reviewed."

I therefore conclude that the existence of insurrection, as declared in the Governor's proclamation, is not issuable.

2. Further, the plaintiff insists that he has a right to take the verdict of a jury on the issue of fact: Was the plaintiff's arrest and detention necessary in suppressing the insurrection?

It would seem to be in keeping with principle to hold the defendants responsible by civil action for a wanton abuse of power. In Luther v. Borden, supra, it is said:

"No more force, however, can be used than is necessary to accomplish the object. And if the power is exercised for purposes of oppression, or any injury willfully done to person or property, the party by whom, or by whose order, it is committed would undoubtedly be answerable."

But the chief justice there declared further:

"And unquestionably the state may use its military power to put down an insurrection, too strong to be controlled by the civil authorities. The power

is essential to the existence of every government, essential to the preservation
of order and free institutions, and is as necessary to the states of this Union
as to any other government. The state itself must determine what degree of
force the crisis demands and if the Governor of Rhode Island deemed the
armed opposition so formidable, and so ramified throughout the state, as to
require the use of its military, and the declaration of martial law. we see no
ground upon which this court çan question its authority. It was a state of
war; and the established government resorted to the rights and usages of war
to maintain itself, and to overcome the unlawful opposition. And in that state
of things the officers engaged in its military service might lawfully arrest any-
one, who, from the information before them, they had reasonable ground to be-
lieve was engaged in the insurrection."

So that, the plaintiff's arrest and detention was not dependent on
his actual participation in the insurrection; and neither the Governor
nor the military officers would be liable civilly for an unintentional
error. Reasonable inquiry and care on their part under the circum-
stances as they then existed ought to relieve them from civil responsi-
bility. The state Constitution enjoined the Governor, as such officer,
to put down the insurrection. The situation must have been more
or less desperate and required prompt action, effective of the purpose.
Measures are sometimes necessary under the police power, that are
severe, such as the summary destruction of property used for an un-
lawful purpose (Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38
L. Ed. 385) ; such as treating property used in an unlawful traffic as
a nuisance (Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L.
Ed. 205; Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346) ;
such as the summary destruction of property to stay conflagration
(Bowditch v. Boston, 101 U. S. 16, 25 L. Ed. 980) ; such as the sum-
mary destruction of obscene books and diseased cattle (Sentell v. Rail-
road Co., 166 U. S. 698, 17 Sup. Ct. 693, 41 L. Ed. 1169) ; such as the
restraint of personal liberty in passing either into or out of an infected
district, for the extermination of contagion (Compagnie Francaise,
etc., v. Board, 186 U. S. 380, 22 Sup. Ct. 811, 46 L. Ed. 1209), and
the prohibitions found in the fourteenth amendment have never been
construed to be an encroachment on such a proper exercise of that
power; neither is it believed that said prohibitions can be so construed
as an encroachment upon the exercise of the military power within
the lines here indicated—invoked to protect the very life of the social
body. In both cases we find their right and justification in the maxim,
"Salus populi, suprema lex."

Looking to the facts, it appears clear that the complaint here is not
against an abuse of power, but the exercise of power. It is alleged
that plaintiff was arrested without warrant issued on a written charge
against him—that he was not taken into court. . The very principle
announced in the state Constitution is challenged in practical effective-
ness by the declaration. The existence of the insurrection itself is
denied. The right and power to use the necessary means to put it
down is disputed; and beside this the reply to the return to the writ
of habeas corpus gave some color to the reasonableness of the belief
that the arrest of the plaintiff was not an abuse of power, for it is
therein said that he was president of the Western Federation of Miners,
whose members had been deported from San Miguel county, and who

intended to return, and whose return would likely be forcibly resisted. This condition alone threatened riot and bloodshed. On one side was a body of determined men of whom the plaintiff was the official head, and whose counsel and advice under the circumstances had been most likely taken. It may likewise be said that it would have also been the duty of those in authority of the military forces to have taken into custody those who occupied the position of leaders, if any, on the other side of the conflict. And beyond this, the proceedings in habeas corpus presented to the Supreme Court the then situation in San Miguel county, and the reason for the arrest and detention of the plaintiff up to that time. These facts under the issues were weighed and considered by that court in the light of the constitutional provision and the principles of law controlling in such emergencies. The prisoner was remanded to the custody of the defendants. This was done, and could only have been done, on the conclusion that his arrest and detention were reasonable and proper means in the suppression of the insurrection. In rendering its opinion that court, among other things, said:

"To deny the right of the militia to detain those whom they arrest while engaged in suppressing acts of violence, until order is restored, would lead to the most absurd results. * * * His arrest and detention in such circumstances are merely to prevent him from taking part, or aiding in a continuation of the conditions which the Governor, in the discharge of his official duties, and in the exercise of the authority conferred by law, is endeavoring to suppress." In re Moyer (Colo.) 85 Pac. 190.

My learned predecessor, Judge Hallett, refused to discharge one Sherman Parker, on a like application, while he was held by the military authorities during the same unfortunate period in the state's history, and in discharging the writ in that case, he justified the arrest and detention of the prisoner as a proper means of suppressing the insurrection.

It follows that the facts disclosed do not show an abuse of power on the part of the defendants, and, hence, there was no violation of the prohibitions found in the fourteenth amendment. It results that this court has not jurisdiction. The demurrer ought to be sustained. It is so ordered.