STATE OF IOWA ex rel. EDWARD L. O'CONNOR, Attorney General, et al., Plaintiffs, v. DISTRICT COURT IN AND FOR SHELBY COUNTY, H. J. MANTZ et al., Judges; C. R. KIBBEY et al., Defendants.

No. 42585.

Edward L. O'Connor, Attorney-general, Frank B. Hallagan, Special Assistant Attorney-general, Folsom Everest, Orville W. Harris, Andrew Bell and Jake S. More, for plaintiffs.

V. H. Byers, for defendants.

DONEGAN, J.—This is an original action in this court brought in the name of the state of Iowa on relation of the attorney general and special assistant attorney general asking for a writ of prohibition directed to the district court of Shelby county, Iowa, and the judges thereof, commanding them to desist from further proceedings in certain actions in said court against George Jensen, Hugo P. Willy, Matthew Tinley, Frank Hallagan, L. Dee Mallonee, ———— Zilinsky and ———— Lacey. In order to understand the issues presented, it is necessary to set out a brief statement of the facts preceding the institution of this action:

On the 28th day of April, 1933, Clyde L. Herring, as governor and commander-in-chief of the military forces of the state of Iowa, issued a proclamation in which it was stated that there then existed "in Crawford County of this state and territory adjacent thereto breaches of peace and imminent danger of a continuance thereof and open defiance of law enforcement by certain individuals and large groups and a vicious and criminal conspiracy and assault has been made upon officers of the department of justice of the State of Iowa, peace officers of Crawford County and adjoining counties and special deputies appointed by the proper officials of Crawford County, Iowa, while said officers were legally attempting to execute the decrees and orders of the district court of Crawford County, Iowa"; that "the department of justice civil authorities, local peace officers and citizens are unable to enforce the laws and have requested military aid to reestablish peace restore law and order, protect public and private property and to protect civil officers in the administration of the laws of this state"; and that "the territory

involved requires the presence of the military forces of this state in order to maintain the public peace and to prevent breaches of the peace and to reestablish law and order." Said proclamation proclaimed "martial law for the territory of Crawford County, Iowa, and territory adjacent thereto," and directed the adjutant general to "place such troops on duty in Crawford County, Iowa and territory adjacent thereto distributing them in such localities as will render them most effective for preserving the public peace and enforcing law and order." Said proclamation further ordered and directed that the adjutant general "take such action and use such forces as he may deem necessary"; that he "protect any and all property, officers, citizens and men from unlawful interference"; and that he "arrest all persons engaging in acts of violence, intimidation and interference with enforcement of the laws." Said proclamation further stated that "the rule of martial law shall be invoked and extended to all parts of the territory of Crawford County, Iowa, and territory adjacent thereto, in so far as the same is necessary for the execution of this proclamation."

Pursuant to such proclamation the military forces of the state of Iowa were on the evening of said 28th day of April, 1933, quartered in and about the courthouse in the city of Denison, Crawford county, Iowa, and remained on duty until the 11th day of May, 1933:

During the period of military occupation the commanding general, Matthew A. Tinley, caused a military commission to be set up. This commission undertook to investigate the facts connected with the disturbances and lawlessness in the military district and in doing so examined several hundred witnesses. Among the witnesses thus examined were C. R. Kibbey, John Carroll, Jake Daeges, Dale McKeig, Nels Hagenson, Harry Marston, R. H. Bailey, Wm. Obrecht, Frank Lamar, Einar Rasmussen and George Slaughter, all of whom were held under restraint for different periods of time, but none of whom was detained after the military forces had retired. After military occupation had been terminated and the courts had opened, charges of contempt of court and conspiracy to commit an illegal offense were filed against more than twenty men who pleaded guilty to such charges. The record does not show that any of the persons involved in this action were included in the number against whom such charges were filed or by whom pleas of guilty were entered.

In October, 1933, long after the military forces had been withdrawn from Crawford county, each of the parties above named, who had been detained by the military forces, instituted an action at law in the district court of Shelby county, Iowa, through V. H. Byers, their attorney, against George Jensen, Hugo P. Willy, Matthew Tinley, Frank Hallagan, L. Dee Mallonee, ——— Zilinsky and ——— Lacey, charging that the defendants, and each of them, both jointly and severally, caused the plaintiffs to be arrested and incarcerated in the county jail.at Denison, Iowa, without the issuance of a warrant, without any crime having been committed for which such arrest could legally be made without a warrant, and without any reasonable grounds to believe that the plaintiff was guilty, and asking for damages for such false arrest.and'detention.

Following the service of notice upon the defendants in said action, all of said defendants, with the exception of Lacey, on the 13th day of March, 1934, filed special appearances and objections to the jurisdiction of the district court of Shelby county, Iowa, and on the same day the Honorable H. J. Mantz, presiding judge of said court, made an entry fixing the time for hearing upon said special appearances on April 7, 1934.

On April 2, 1934, the petition for writ of prohibition in this case was filed in this court. In such petition it is alleged in substance that the arrest and detention of the plaintiffs in said actions in the district court of Shelby county were all made and done by the defendants pursuant to the authority and direction contained in the proclamation of the governor of the state of Iowa, as commander-in-chief of the military forces of this state, and as such were in truth and in fact done by the sovereign state of Iowa under the orders of the chief executive thereof; that neither the governor nor any of the parties defendant in said suits, who were acting in his behalf and pursuant to his orders, can be held responsible to the plaintiffs therein for any of the acts of which complaint is made by plaintiffs; and that the judicial department of this state is wholly without authority to inquire into or pass upon the legality of the acts of the executive department of the state in putting down insurrection and in restoring law and order in the military district established by the governor's proclamation.

To the petition for writ of prohibition certain of the defendants herein, who were the plaintiffs in the actions in the district court of Shelby county, and their attorney, filed a demurrer and motion

to strike, which was ordered submitted with the case, and also filed an answer. The cause was heard and submitted to this court upon the written affidavits of the relators and defendants herein and the briefs and arguments of opposing counsel.

Several questions are raised by the demurrer to and motion to strike the petition and by the answer filed by the defendants, but, for the purposes of this opinion, we think the issues necessary to be considered and determined may be reduced to the following: 1. Has this court jurisdiction to issue a writ of prohibition? 2. Has the state of Iowa, through its attorney general and special assistant attorney general, a right to maintain this action? 3. Can this court cause a writ of prohibition to issue before the trial court has ruled upon the special appearance filed therein by the defendants? 4. Have the defendants in the actions in the district court of Shelby county an adequate remedy at law by appeal or certiorari? 5. Can this court determine facts or take cognizance of facts outside of the record in the actions in the district court of Shelby county?

I. The first question for our consideration is that which puts in issue the right of this court to issue the writ of prohibition. If this court has no right to issue such writ, then, of course, it is unnecessary for us to proceed further. The power to issue a writ of prohibition can only be exercised by a superior court over an inferior court; it cannot be exercised by a court against another court of equal rank. It is generally accepted that this power resides in the majority of the higher courts of the states and in the federal courts, but only as an ancillary writ in cases over which the court otherwise has jurisdiction.

"Generally, except where the constitution or statutes in express terms confer either the original jurisdiction for that purpose or the power to award 'original remedial writs,' or the power to issue any remedial writs necessary to give the court of last resort general control over courts of inferior jurisdiction, or a general superintending control over all inferior courts, the writ will be granted by a court of last resort only in aid of its appellate jurisdiction." 50 C. J. 695.

It is conceded that neither the constitution nor the statutes of this state expressly confer upon the supreme court the power to issue the writ of prohibition. The power to issue such writ, if it be possessed by this court at all, must be found in section 4, article V,

of the constitution, and in section 12831, of the Code of Iowa, 1931. Section 4, article V of the constitution, is as follows:

"The Supreme Court shall have appellate jurisdiction only in cases in chancery, and shall constitute a Court for the correction of errors at law, under such restrictions as the General Assembly may, by law, prescribe; and shall have power to issue all writs and process necessary to secure justice to parties, and exercise a supervisory control over all inferior Judicial tribunals throughout the State."

Section 12831 of the Code provides:

" * * * The court may issue all writs and processes necessary for the exercise and enforcement of its appellate jurisdiction."

Since the question with which we are here concerned involves the original and not the appellate jurisdiction of this court, it seems apparent that neither section 12831 nor the first clause of section 4, article V, of the constitution can be construed as conferring the power which this court is asked to exercise in this case. If such power be possessed by this court it must be found, therefore, in the second clause of section 4, article V, of the constitution, which provides that the supreme court "shall have power to issue all writs and process necessary to secure justice to parties, and exercise a supervisory control over all inferior Judicial tribunals throughout the State."

The question of the right of this court to issue the writ of prohibition has never been presented directly to or determined by this court. Mr. Justice Deemer, in his work entitled, "Iowa Pleading and Practice," inserted a chapter concerning pleading and practice in connection with the issuance of this writ. In section 1107, volume 2, he says:

"Jurisdiction of Courts to Issue.—Whilst our Code of procedure makes no reference to any writs or other processes not heretofore considered, yet it is generally conceded that courts, especially the Supreme Court having supervisory power over inferior courts and tribunals, have inherent power and authority to issue the necessary writs to accomplish these ends. The Supreme Court has in two or three instances entertained jurisdiction of petitions for writs of prohibition and has also heard motions for summary orders upon inferior courts and tribunals. Direct authority for this seems to

be found in the Constitution, and the statutes of the State. It is doubtful if the legislature has authority to deprive a court of its right to issue the writs and processes necessary to secure justice or of the exercise of its supervisory control over inferior judicial tribunals. It was held by the Supreme Court of Wisconsin that the legislature had no such power, even over the circuit or district courts. If, then, the legislature cannot, by direct action, deprive the courts of their inherent power to issue common law writs necessary to the exercise of their jurisdiction, it surely will not be held that legislative inaction amounts to a denial of this power. It must be assumed then, that our courts have the right to issue writs of prohibition."

In Barry v. District Court, 167 Iowa 306, 149 N. W. 449, Mr. Justice Deemer, in denying the petition for a writ of certiorari, said:

"It may be that a writ of prohibition might have been secured, to prevent future action, but the writ of certiorari is to review some ruling made by the trial court. If one seeks to restrain the action of a court because it proposes to act in excess of its jurisdiction, or because of an entire want of jurisdiction, he must do so by writ of prohibition and not by writ of certiorari."

In State ex rel. Freeling v. Kight, 49 Okl. 202, 152 P. 362, the court construed a section of the constitution conferring general appellate jurisdiction on the supreme court and providing that "the original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law," and said:

"Similar provisions, with varying phraseology, are now found in the Constitutions of a number of the states, and it has been held that the grant of jurisdiction of a general superintending control over inferior courts is separate and in addition to the general appellate jurisdiction of the Supreme Court." (Citing cases.)

In Attorney General v. Blossom, 1 Wis. 317, the defendant in an application for a writ of quo warranto filed a motion to dismiss for want of jurisdiction, claiming that the power to issue such writ, if it existed at all, was merely ancillary to the appellate jurisdiction of the court. The constitution provided that:

"The Supreme Court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same."

The court held that it had original jurisdiction to issue all such writs and said:

"This class of writs, it would seem, appertain to, and are peculiarly, the instruments of the sovereign power, acting through its appropriate department; prerogatives of sovereignty, represented in England by the king, and in this country by the people in their corporate character, or, in other words, the State; and from their very nature, from their peculiar character, functions and objects, to appertain to, and appropriately belong to the supreme judicial tribunal of the State."

This question was again before the supreme court of Wisconsin in State v. Johnson, 103 Wis. 591, 79 N. W. 1081, 51 L. R. A. 33, in which it was contended that that court had no jurisdiction to issue an original writ of mandamus. After referring to the court's holding in Attorney General v. Blossom, supra, the court said:

"It must be regarded as settled, therefore, that by the constitutional grant of 'a general superintending control over all inferior courts' this court was endowed with a separate and independent jurisdiction, which enables and requires it in a proper case to control the course of ordinary litigation in such inferior courts, and was also endowed with all the common-law writs applicable to that jurisdiction. What those writs are, and the manner of their use, are questions which have not as yet been directly presented or decided, but they are necessarily involved in the present case, and here must now be considered. * * *

"It is very apparent that when the makers of the constitution used the words 'superintending control over all inferior courts' they definitely referred to that well-known superintending jurisdiction of the court of king's bench. In England it was a branch of the king's power lodged with the king's court; in this country it is a branch of the sovereign power of the people, committed by them as a sacred charge to this court, not to be exercised upon light occasion, or when other and ordinary remedies are sufficient, but to be wisely

used for the benefit of any citizen when an inferior court either refuses to act within its jurisdiction, or acts beyond its jurisdiction to the serious prejudice of the citizen. 2 Spell. Extr. Relief, section 1388. The two great writs by which this superintending jurisdiction was principally exercised by the court of King's bench were the writs of mandamus and prohibition; the one directing action by the inferior court, and the other forbidding action. * * * "

In State ex rel. Tewalt v. Pollard, 112 Wis. 232, 87 N. W. 1107, the supreme court of Wisconsin refused to issue a writ of prohibition because such writ might have been obtained from the circuit court under the provision of the constitution which stated that:

"The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law; and appellate jurisdiction from all inferior courts and tribunals, and a supervisory control over the same. They shall also have the power to issue writs of habeas corpus, mandamus, injunctions, quo warranto, certiorari, and all other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and jurisdictions."

Referring to the fact that this provision did not expressly name the writs which the circuit court was authorized to issue, the supreme court said:

"But the third grant of jurisdiction, namely, the 'supervisory control' is not limited by the constitution itself, nor is power expressly or impliedly given to the legislature to impair it or take it away. It stands in the constitution as an absolute grant of power, which is just as broad and sweeping in its terms as the grant of 'superintending control' to this court in section 3 of article VII of the constitution. This grant carried with it the power to issue all the common-law writs necessary to carry it into effect, even had no writ been named in the constitution. [Citing cases.] It was therefore unnecessary to name any writs in the constitution, because the court took the writs with the grant of jurisdiction, and hence, also, the fact that the writ of prohibition is not named in the section is of no moment."

In Hindman v. Toney, 97 Ky. 413, 30 S. W. 1006, the court of appeals said:

"Section 110 of the constitution provides that the court of appeals 'shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions.' It was held prior to adoption of the present constitution that there could be a proceeding in this court for prohibition, only in a case in which, in the exercise of appellate jurisdiction, it has the power of controlling the inferior court by a direct revision of its judicial acts; and it was further held that a writ of prohibition is not an appropriate proceeding in a court of merely appellate jurisdiction, inasmuch as the revisory power of such a court can afford adequate relief, without a resort to a proceeding of that character. Arnold v. Shields, 5 Dana 18; Sassen v. Hammond, 18 B. Mon. 672. But it seems to have been intended by the clause of the constitution quoted, which was not in the old constitution, to give to the court of appeals plenary power to issue writs in every case when necessary to give it general control of inferior jurisdictions."

Again, in Shackelford v. Patterson, 110 Ky. 863, 62 S. W. 1040, a writ of prohibition was granted by the court of appeals of Kentucky, and the court said:

"It is no longer an open question that this court has authority to issue a writ of prohibition in a proper case. Section 110 of the constitution reads as follows: ' * * * Said court shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions.' In Hindman v. Toney, 97 Ky. 413, 30 S. W. 1006, this court construed section 110 of the constitution, and held that it was intended to give to the court of appeals plenary power to issue writs in every case when necessary to give it general control of inferior jurisdictions."

In Hutchins v. City of Des Moines, 176 Iowa 189, 157 N. W. 881, the supervisory powers of this court were considered in connection with the question of the constitutionality of an act of the legislature conferring upon the supreme court the power to appoint three district judges to act as a court of condemnation in proceedings by a city to take over a privately owned water works system. Mr. Justice Ladd, in the course of a very learned discussion concerning the powers of the supreme court, said:

"Section 1 of Article V of the Constitution declares:

" 'The judicial power shall be vested in a Supreme Court, district court, and such other courts, inferior to the Supreme Court, as the general assembly may, from time to time, establish.'

"Section 4 of the same article reads:

" 'The Supreme Court shall have appellate jurisdiction only in cases in chancery, and shall constitute a court for the correction of errors at law, under such restrictions as the general assembly may by law prescribe; and shall have power to issue all writs and process necessary to secure justice to parties, and exercise a supervisory control over all inferior judicial tribunals throughout the state.'

"While the Constitution created the courts, it has not undertaken to specify in detail their functions, nor to define their power, save plainly to indicate that the entire judicial power has been conferred on them. Terms are not defined, but language of precise and technical meaning in the science of government and law is used. The Supreme Court is that of last resort, but the means whereby its jurisdiction is to be exercised are not prescribed. The import of the first two clauses in the section quoted is restrictive, for the jurisdiction in one is declared to be appellate only, and the other may be restricted by the general assembly; otherwise, the jurisdiction of the court might be more ample than the policy might demand or convenience require. Powell v. Spaulding, 3 G. Greene 417. At the same time the framers of the Constitution evidently apprehended danger in restricting the court entirely to the functions of an appellate tribunal; for contingencies might arise wherein the interposition of the highest judicial tribunal alone would be adequate to preserve the balance of powers, arrest usurpation on the one hand or quell resistance to constitutional authority on the other, guarding the liberty of the citizen and shielding the sovereignty of the state. Therefore, in seeming exception to all that preceded, they conferred unlimited supervisory control over inferior tribunals throughout the state and authority to issue all writs and process necessary to secure justice to parties. Within this sphere is a grant of unlimited power."

That the higher courts to which general supervisory powers over inferior courts and tribunals have been given, have the power to issue all the common-law writs including the writ of prohibition, see, also, Kendall v. United States, 12 Pet. (37 U. S.) 524, 9 L. Ed.

1181; Matney v. King, 20 Okl. 22, 93 P. 737; Ex parte Crane, 5 Pet. 190, 8 L. Ed. 92. We reach the conclusion that, under the provision of our constitution which provides that the supreme court "shall have power to issue all writs and process necessary to secure justice to parties, and exercise supervisory control over all inferior Judicial tribunals throughout the State," this court has the power to issue a writ of prohibition.

II. The defendants in this action (the plaintiffs in the actions in Shelby county) challenge the right of the state of Iowa through its attorney general to maintain this action, on the ground that the state of Iowa has no interest in the actions brought in Shelby county.

In High's Extraordinary Legal Remedies (3d Ed.) par. 779, it is said:

"As regards the parties to the proceeding (for writ of prohibition), less stringency is observed than in the use of the extraordinary remedies heretofore considered. * * * But while it is irregular to issue the writ in the name of a private citizen, instead of the state, yet, if such irregularity in no way affects the merits of the application, the writ will not be set aside when a jurisdiction is usurped without any pretense of right. * * * The governing principle in such cases is that, when an inferior court proceeds in excess of its lawful jurisdiction, it is chargeable with a contempt of the sovereign as well as a grievance to the parties injured, and the courts are therefore less stringent as to the degree of interest required of the applicant than in cases of mandamus and other extraordinary remedies."

In People ex rel. Bear Creek Development Corporation v. District Court, 78 Colo. 526, 242 P. 997, there was involved a petition to the supreme court of Colorado for a writ of prohibition. In the opinion it is stated:

"The respondent also moves to quash the order to show cause and the restraining order pursuant thereto. The points made in that motion are, in substance: * * * fifth, that they have no right to use the name of the people. * * * As to the fifth, the almost universal practice is to use the people's name in mandamus, prohibition, and quo warranto. The people's name is a matter of form, used as a matter of course."

In Connecticut River R. R. Co. v. County Commissioners of Franklin, 127 Mass. 50, 34 Am. Rep. 338, which involved an application for a writ of prohibition against county commissioners, the court said:

"The fact that an agent of the Commonwealth is the adverse party in the proceedings before the county commissioners affords no reason for refusing the writ. A writ of prohibition, like a writ of mandamus or of certiorari, is properly sued out in the name of the Crown or the State; the only necessary defendant is the tribunal whose proceedings are sought to be restrained, controlled or quashed; * * * "

In City of Roswell v. Richardson, 21 N. M. 104, 152 P. 1137, a demurrer to the petition because not brought in the name of the state was overruled, and the court said:

" * * * where the want of jurisdiction is clear, the failure to sue out the writ of prohibition in the name of the state will be treated as a mere irregularity not affecting the merits of the application."

In Baldwin v. Cooley, 1 S. C. 256, the court said:

"It is, also, assigned as error, that the writ issued in the suit of an individual, when it should have issued in that of the State and the Solicitor of the Circuit. * * *

"It was irregular to submit the suggestion in the name of a private person; but for such a mere irregularity, in no way affecting the merits of the application, we are not disposed to set aside the writ, when the parties against whom it is directed have usurped a jurisdiction to which it is clear they had no pretense of right."

The authorities quoted above are sufficient to indicate that the courts of this country have not followed any hard and fast rule in regard to the form in which the petition for a writ of prohibition is presented. As stated in 50 C. J. 699, "although a writ of prohibition is properly sued out in the name of the state, yet it is well settled that the state is not a necessary party." See, also, In re Fenton, 58 Misc. 303, 109 N. Y. S. 321; Frederick v. Rowe, 105 Fla. 193, 140 So. 915; Davenport v. Sterling Lumber Co., 143 La. 671, 79 So. 215; People ex rel. Grenfell v. District Court, 89 Colo. 78, 299 P. 1. The important consideration in determining the sufficiency

of the petition is not the form in which it is brought but the substance of the allegations which it contains. Moreover, if the facts set forth in the petition in the case at bar involve acts of the sovereign state done by the executive department through the chief executive and those acting under him, we think the petition states a sufficient interest in this action on the part of the state to warrant the bringing of the action in its name.

III. It is contended that a writ of prohibition should not issue from this court until the district court of Shelby county has ruled upon the special appearance filed by the defendants in the cases therein pending. That there must be some action taken by the lower court indicating its intention to assume jurisdiction seems to be a general rule which has been followed in most jurisdictions. 50 C. J. 695. This rule, however, has many exceptions. 50 C. J. 597; State v. Eby, 170 Mo. 497, 71 S. W. 52; People v. District Court, 29 Colo. 182, 68 P. 242; Lavoy v. Toye Bros. Auto, etc., Co., 159 La. 209, 105 So. 292; State v. Jackson, 58 Mont. 90, 190 P. 295. The court has a large discretion in the issuance of the writ, and if the case involves matters of public interest this may be an important consideration. People v. District Court, supra. This question was very thoroughly considered in State v. Eby, supra, and many authorities were there cited and analyzed. Among the cases cited with approval was State v. Aloe, 152 Mo. 466, 54 S. W. 494, 47 L. R. A. 393, wherein, discussing the general rule here contended for, the court said:

"But while we agree to that general rule, we do not apply it as the counsel who invoke it here insist. *It is not a jurisdictional requirement;* it is not essential, like a motion for a new trial before appeal. The writ of prohibition does not issue *ex debito justitiae,* but only in the discretion of the court. When the applicant has made out his prima facie case bringing it within the technical requirements of the law, the question still remains for the court, *Does the real right and justice of the case call for this extraordinary remedy?*" (Italics are ours.)

The petition in the case at bar alleges the filing of a special appearance raising the question of the trial court's jurisdiction, the fixing of a time for hearing thereon by the trial court, and the intention of the trial court to proceed to hear the cases in the district court of Shelby county. Under the authorities, we think this pre-

sents a situation in which the court to which the application for the writ is made may exercise its discretion as to whether the writ should issue on the facts presented to it, without an actual ruling having been made by the trial court upon the special appearance.

IV. Objection is made that, even though the case might otherwise properly be one for the issuance of a writ of prohibition, such writ will not issue in this case because the petitioners have an adequate remedy either by writ of certiorari or by appeal from any judgment that might be entered in the district court. While this contention is in accord with the general rule, it should be noted that such rule has reference to a remedy that is not only available but also adequate. As stated in 50 C. J. 686:

"The right to prohibition is defeated, not by the existence, but by the adequacy, of the remedy by appeal. Prohibition is properly granted if the remedy by appeal is inadequate."

Monette Road Imp. District v. Dudley, 144 Ark. 169, 222 S. W. 59; Gloyd v. Los Angeles County Super. Ct., 44 Cal. App. 39, 185 P. 995; Fleece v. Shackelford, 204 Ky. 841, 265 S. W. 460; Osage Oil, etc., Co. v. Continental Oil Co. (C. C. A.) 34 F. (2d) 585; Jacobsen v. Super. Ct., 192 Cal. 319, 219 P. 986, 29 A. L. R. 1399. In 50 C. J. 683, it is said:

"Prohibition may issue notwithstanding another remedy for the grievance complained of is available if such other remedy would not afford complete and adequate relief. To be adequate the concurrent remedy must be sufficient to afford the relief the case demands. While it has been asserted that prohibition will be granted where the remedy available is insufficient to prevent immediate injury or hardship to the party aggrieved, particularly in criminal cases, there is no general rule by which the adequacy or inadequacy of a remedy can be ascertained. Whether a remedy is adequate or not is a question resting within the sound discretion of the court to which application for relief is made, and is to be determined on the facts of each particular case. The court may properly consider the expense involved in the prosecution of other remedies, or the delay or inconvenience incident thereto."

That the writ of prohibition may issue notwithstanding the existence of another adequate remedy, see 50 C. J. 682, and cases cited. It appears from the record herein that eleven cases involving

the same proposition are now pending in the district court of Shelby county, and that, should the district court of that county not be prohibited from proceeding to hear said actions, additional actions may be brought against other officers and members of the militia. Petitioners urge that the writ should issue to avoid the expense of prosecuting the several cases in Shelby county and appeals therefrom, and the multiplicity of actions which would otherwise result. This appears to have been recognized as a valid ground why the court should, in the exercise of its discretion, grant the writ in the case of State v. Eby, 170 Mo. 497, 71 S. W. 52. See, also, Hatfield v. Graham, 73 W. Va. 759, 81 S. E. 533, L. R. A. 1915A, 175, Ann. Cas. 1917C, 1. It is quite apparent, therefore, that, even though there may be a remedy by appeal, the existence of such remedy will not prevent this court from issuing a writ of prohibition if, under all the facts and circumstances presented to it, this court finds that such remedy by appeal is inadequate. This brings us to a consideration of the question as to what facts and circumstances this court may take into consideration in determining whether the writ should issue.

V. This is an original action brought in this court. The petition was filed April 2, 1934. On the 4th day of April, 1934, upon application of the plaintiffs herein, an order was entered setting the petition down for hearing on the 14th day of May, 1934. This order provided for the service of notice upon each of the defendants in this action, that each of them should have five days to file answer after such service of notice, and that all evidence offered in support of the controverted allegations of fact should be in writing in the form of affidavits or depositions. Such of the defendants as were plaintiffs in the actions below filed a demurrer, which was ordered submitted with the case, and also filed an answer. Both plaintiffs and defendants filed affidavits in support of the controverted allegations of fact. In their demurrer such defendants state:

"That the facts alleged in the petition herein constitute, if anything, proper matter to be set up in an answer in said causes of action for the determination of the trial court of their sufficiency as a matter of defense and could only reach this Court by appeal from a decision of the Trial Court."

In their answer such defendants reallege and by reference make the allegations and grounds of the demurrer a part of their answer, and as a further ground of said answer state:

"That this Court has no legal jurisdiction to try and determine questions of fact on any legal procedure originally commenced to determine the validity of a lawsuit or lawsuits maintained in District Court; that this procedure involves disputed facts of which the District Court has only the original jurisdiction to determine; that this procedure would deprive these Defendants of their constitutional right to submit their cause to a jury in the event the facts presented by them make a presumptive cause of action."

There is thus before this court the question as to its power to determine the controverted allegations of facts which have been presented to it by the pleadings and the affidavits of the parties to this action, and which were not before the district court. In 50 C. J. 708, par. 136, referring to the scope and extent of the hearing upon an application for a writ of prohibition, it is said:

"In a prohibition proceeding the only inquiries permitted are whether the inferior tribunal is exercising a jurisdiction it does not possess, or, having jurisdiction, has exceeded its legitimate powers. The question is not whether the inferior court is likely to commit error while exercising its jurisdiction or whether the facts alleged are or are not sufficient to entitle plaintiff to maintain an action. The sufficiency of the petition or complaint in the proceeding below will not be passed upon."

In the same volume, on page 710, par. 137, referring to the matters that may be considered by the court to which the application is made, it is further said:

"For the purpose of determining whether the inferior tribunal has jurisdiction, the court may look to the allegations contained in the motion or petition in the proceeding below, which are presumed to be true, and to the evidence before the inferior court, but it cannot consider issues of fact dehors the record, raised in the superior court by the petition, answer, and accompanying affidavits."

In Clendaniel v. Conrad, 3 Boyce (Del.) 549, 83 A. 1036, Ann. Cas. 1915B, 968, which was an original petition to the supreme court of Delaware for a writ of prohibition, the plaintiffs alleged

the invalidity of a law under which the defendants were proceeding to act, and filed affidavits tending to support the averments of fact alleged in their petition. The court, reading on page 1052 of 83 A., said:

"The plaintiff not only attacks the constitutionality of the act, chapter 189, volume 26, of the Laws of Delaware, but has included in his petition, and accompanying affidavits, averments of fact dehors the record of the proceeding before Judge Conrad which is sought to be enjoined and prevented by the writ of prohibition prayed for.

"The defendants contend that this court cannot hear or determine in this proceeding any such averments.

"Paragraph 5 of section 12 of article IV of the Constitution of this state confers upon the Supreme Court jurisdiction 'to issue writs of prohibition * * * to the Superior Court, the Court of Oyer and Terminer, the Court of General Sessions, the Court of Chancery and the Orphans' Court, or any of the judges of said courts, and all orders, rules and processes proper to give effect to the same.' By such provision this court is given original jurisdiction to issue writs of prohibition; and this is the first case in which the exercise of such jurisdiction has been invoked.

"The writ of prohibition is a common-law writ. It issues only from a superior court to an inferior court, tribunal or judge, and only for the purpose of keeping such inferior court within the limits of its jurisdiction. That is the sole purpose of the writ.

"The common-law procedure included a method, and also the means, of determining issues of fact dehors the record in prohibition cases; but the court of last resort in England, corresponding to this court, did not have original jurisdiction to issue writs of prohibition.

"No common-law practice or procedure could govern the Supreme Court of this state in the exercise of such original jurisdiction; and no procedure has been established in this state, either by statute or decisions, applicable to the subject.

"While this court is given by the Constitution the right to make all orders, rules and processes proper to give effect to its writs of prohibition, it is not thereby given the power or means of trying issues of fact dehors the record. It can have no jury, neither has it the authority to appoint commissioners, masters or other officers or agents to take testimony, examine questions of fact and report

their findings to the court. In other words, this court has no machinery for the determination of issues of fact outside the record."

In Ex parte Easton, 95 U. S. 68, 77, 24 L. Ed. 373, the supreme court of the United States said:

"Application for the writ of prohibition is properly made in such a case, upon the ground that the District Court has transcended its jurisdiction in entertaining the described proceeding; and whether it has or not must depend, not upon facts stated dehors the record, but upon those stated in the record upon which the District Court is called to act, and by which alone it can regulate its judgment. Mere matters of defense, whether going to oust the jurisdiction of the court or to establish the want of merits in the libelants' case, cannot be admitted under such a petition here to displace the right of the District Court to entertain suits, the rule being that every such matter should be propounded by suitable pleadings as a defense for the consideration of the court, and to be supported by competent proofs, provided the case is one within the jurisdiction of the District Court."

While this court in its order fixing the hearing on the petition of the plaintiffs herein prescribed the time of defendants' answers and provided for the presentation of disputed allegations of fact by affidavits or depositions, on more mature consideration and in harmony with what appears to be the overwhelming weight of authority, we are now forced to the conclusion that, in attempting to provide the machinery for the original trial and determination of facts in this court, we were exceeding any power that we possess. Even if there may be cases in which this court in entertaining an original proceeding may determine the facts involved therein (a question that we do not now consider or determine), we do not think that the application for a writ of prohibition is a proceeding in which such power can be exercised. That the court to which an application for a writ of prohibition is presented is confined to a consideration of the matters presented by the record in the lower court, and cannot consider issues of fact dehors such record, is a rule which is sustained not only by the authorities cited above, but by many others. People ex rel. Vigil v. District Court, 33 Colo. 66, 79 P. 1024; State ex rel. Chase v. Hall, 297 Mo. 594, 250 S. W. 64; Looney v. Election Board, 146 Okl. 207, 293 P. 1056; State ex rel. Terry v. Holtkamp, 330 Mo. 608, 51 S. W. (2d) 13; Russell v.

Taylor, 121 Tex. 450, 49 S. W. (2d) 733; Arkansas State Highway Commission v. Dodge, 186 Ark. 640, 55 S. W. (2d) 71; Hewitt v. Justice Court, 131 Cal. App. 439, 21 P. (2d) 641; Hewitt v. State, 108 Fla. 335, 146 So. 578; State ex rel. Cone v. Bruce, 227 Mo. App. 631, 55 S. W. (2d) 733.

Plaintiffs herein, however, contend that, even if this court be without power to determine the facts alleged in the pleadings and set out in the affidavits filed herein, the record in the court below is sufficient to show that the district court was without jurisdiction to proceed with the cases before it. It is well, therefore, to consider what was before the district court. As far as we can determine from the record before us in this case, the record in the lower court consisted of the petitions of the plaintiffs therein, of the special appearances filed by the defendants therein, and of the order entered by the district court fixing time for hearing on such special appearances. The record shows the contents of the petitions filed in the court below, but we have searched through the record before us and nowhere have we been able to find anything that gives us the contents of the special appearances filed therein. The petitions allege in substance: That the defendants Jensen and Willy, were the sheriffs of Shelby and Crawford counties respectively; that on the —— day of April, 1933, the defendants, and each of them, claim that a felony had been committed in Crawford county, to wit, a conspiracy to obstruct justice and interfere with the process of the district court; that no such crime had been committed; that the defendants, and each of them, both jointly and severally, caused the plaintiffs to be arrested and incarcerated in the county jail of Denison, Iowa, without a warrant; that while under arrest plaintiffs were subjected to severe examination and humiliated and held up to public scorn; that the defendants, nor either or any of them, had any reasonable ground to believe that plaintiffs were guilty of the crimes alleged to have been committed or of any crime; that, in truth and in fact, the plaintiffs had nothing whatever to do with the crimes alleged to have been committed, and the defendants, or any of them, had no reasonable grounds for believing that plaintiffs had any part therein. Plaintiffs herein contend that the petitions filed in the district court failed to state a cause of action that could be entertained by such court, because the arrests with which the defendants therein are charged with having made were made by them as officers and members of military forces occupying the

district in which such arrests were made pursuant to a proclamation of the governor of the state of Iowa declaring a state of insurrection to exist in such district and proclaiming martial law therein; and that, as such officers and members of the military forces acting under orders of the governor and under a proclamation of martial law, they were not subject to personal liability for any acts done by them in suppressing such insurrection unless such acts were malicious. The petitions filed in the district court did not allege that the arrests were made maliciously. On the other hand, there is nothing in such petitions to indicate that the arrests were made by officers or members of the military forces, or that the troops were occupying the territory pursuant to a proclamation of the governor declaring martial law and providing for the suppressing of an insurrection. Plaintiffs herein contend, however, that these matters were all such that the district court had judicial notice of them, and that the district court, having before it the fact that a status of martial law existed and that the arrests in question were made by the military forces pursuant to the orders of the governor proclaiming a state of insurrection and imposing upon them the duty of suppressing same, and there being nothing in the petition alleging malice on the part of the defendants in such actions, the district court had sufficient before it to apprise it that the defendants therein could not be held liable for the wrongful arrests which they were alleged to have made.

Plaintiffs herein concede that if the arrests were made maliciously the defendants in the district court would be liable in damages in a civil action, but contend that, unless such arrests were maliciously made, there can be no civil liability. In support of this contention they cite several Iowa cases to the effect that public officers and boards, in the performance of duties imposed upon them by the state, are not liable except in cases where malice appears. None of these cases, however, refers to acts done by officers or members of a military force in the suppression of insurrection under a proclamation of martial law. Plaintiffs herein have not cited, and we have been unable to find, any case which specifically holds that, where an officer or member of a military force is engaged in suppressing an insurrection under a proclamation of martial law, the law is as claimed by plaintiffs. In Luther v. Borden, 7 How. 1, 87, 12 L. Ed. 581, it was held that an officer during time of insurrection might legally arrest anyone who he has reasonable grounds

to believe is engaged in the insurrection, or may forcibly enter a house, but that no more force can be used than is necessary to accomplish the object, and in discussing this phase of the case the court said:

"To conclude, it is manifest that another strong evidence of the control over military law in peace, and over these belligerent rights in civil strife, which is proper in a bold and independent judiciary, exists in this fact, that whenever they are carried beyond what the exigency demands, even in cases where some may be lawful, the sufferer is always allowed to resort, as here, to the judicial tribunals for redress."

In Moyer v. Peabody, 212 U. S. 78, 29 S. Ct. 235, 53 L. Ed. 410, there were involved arrests made by military officers under the directions of defendant governor, and the court, while sustaining the immunity of the governor from civil liability for such arrests, said:

"So long as such arrests are made in good faith and in the honest belief that they are needed in order to head the insurrection off, the governor is the final judge and cannot be subjected to an action after he is out of office, on the ground that he had not reasonable ground for his belief. If we suppose a governor with a very long term of office, it may be that a case could be imagined in which the length of the imprisonment would raise a different question."

Likewise, in Commonwealth ex rel. Wadsworth v. Shortall, 206 Pa. 165, 55 A. 952, 67 L. R. A. 193, 98 Am. St. Rep. 759, where the military forces had been called out by the governor to suppress an insurrection, the court, while holding that the officers could not be prosecuted civilly for particular acts alleged to have been done by them, went on to say that, under the settled practice in England and the United States the officers of the military forces "are liable to be tried and punished for any excess * * * of power, not by the martial code, but under the common and statute law." See, also, Herlihy v. Donohue, 52 Mont. 601, 161 P. 164, L. R. A. 1917B, 702, Ann. Cas. 1917C, 29.

As already stated, the plaintiffs herein concede that the officers of the military forces would be liable for a wrongful arrest if made maliciously, and, as indicated by the cases above cited, such officers may be liable in damages in a civil action in cases where malice does not appear, if the acts done by them were done wantonly and without any belief that such acts are necessary or appropriate

to the accomplishment of the object which such officers are under the duty to attain. While, in our opinion, the rule as to immunity of officers of military forces engaged in suppressing an insurrection is not as broad as contended for by plaintiffs herein, on the other hand, we do not think that, as contended by the defendants herein, such officers have no greater immunity than civil officers in time of peace. Much argument has been devoted to the rights and liabilities of officers of military forces under martial law and in times of peace. Martial law has been defined as the will of the commanding officer which in time of war supersedes all other laws. It may be conceded that martial law in the strict and technical meaning of the term does not exist where state troops are called out by the governor to suppress an insurrection, but we think the overwhelming weight of authority does extend to the military officers under such conditions much greater latitude in the exercise of their discretion as to what means it is necessary and proper for them to employ than is possessed by civil officers in times of peace. The case of Moyer v. Peabody, in its facts, was quite similar to the case at bar. This action was brought against Peabody who, while governor of Colorado, had called out the state troops for the suppression of an insurrection. The officers of such troops, pursuant to the governor's order to suppress the insurrection, had arrested and detained the plaintiff Moyer. After the governor's term had expired, Moyer brought action against him in the federal court for damages. From a decision in favor of the defendant, which appears in Moyer v. Peabody (C. C.) 148 F. 870, the case was taken to the supreme court of the United States on a writ of error. The opinion in the supreme court appears at 212 U. S. 78, 29 S. Ct. 235, 53 L. Ed. 410, and was written by Mr. Justice Holmes. In the course of the opinion it is said:

"It would seem to be admitted by the plaintiff that he was president of the Western Federation of Miners, and that, whoever was to blame, trouble was apprehended with the members of that organization. We mention these facts not as material, but simply to put in more definite form the nature of the occasion on which the governor felt called upon to act. In such a situation we must assume that he had a right under the state constitution and laws to call out troops, as was held by the Supreme Court of the State. The constitution is supplemented by an act providing that 'when an invasion of or insurrection in the State is made or threatened the

Governor shall order the National Guard to repel or suppress the same.' Laws of 1897, c. 63, Art. 7, section 2, p. 204. That means that he shall make the ordinary use of the soldiers to that end; that he may kill persons who resist and, of course, that he may use the milder measure of seizing the bodies of those whom he considers to stand in the way of restoring peace. Such arrests are not necessarily for punishment, but are by way of precaution to prevent the exercise of hostile power. *So long as such arrests are made in good faith and in the honest belief that they are needed in order to head the insurrection off, the Governor is the final judge and cannot be subjected to an action after he is out of office on the ground that he had not reasonable ground for his belief.*" (Italics are ours.)

That the officers of the troops who are charged with carrying out the orders of a governor are entitled to the same immunity as the governor seems to be well established. These questions are very fully considered in Moyer v. Peabody (C. C.) 148 F. 870, Moyer v. Peabody, (on appeal) 212 U. S. 78, 53 L. Ed. 410; In re Moyer, 35 Colo. 159, 85 P. 190, 12 L. R. A. (N. S.) 979, 117 Am. St. Rep. 189; People ex rel. Alexander v. District Court, 29 Colo. 182, 68 P. 242; Commonwealth ex rel. Wadsworth v. Shortall, 206 Pa. 165, 55 A. 952, 65 L. R. A. 193, 98 Am. St. Rep. 759; In re Boyle, 6 Idaho 609, 57 P. 706, 45 L. R. A. 832, 96 Am. St. Rep. 286; Ex parte McDonald, 49 Mont. 454, 143 P. 947, L. R. A. 1915B, 988, Ann. Cas. 1916A, 1166; State ex. rel Mays v. Brown, 71 W. Va. 519, 77 S. E. 243, 45 L. R. A. (N. S.) 996, Ann. Cas. 1914C, 1; Ex parte Jones, 71 W. Va. 567, 77 S. E. 1029, 45 L. R. A. (N. S.) 1030, Ann. Cas. 1914C, 31; Hatfield v. Graham, 73 W. Va. 759, 81 S. E. 533, L. R. A. 1915A, 175, Ann. Cas. 1917C, 1. It may be conceded that, under the doctrine of Moyer v. Peabody and other cases above cited, if the facts alleged in the petition and affidavits in this court were before the district court and were there undisputed, or, if disputed, were found to be true, the defendants in the actions in the district court could not be held liable. The weakness of plaintiffs' position in the case, as now presented to this court, is that these facts were not before the district court. The petitions filed in the actions in the district court on their face stated a cause of action. No pleading was filed by the defendants in the actions in the district court controverting the allegations of the petitions or alleging affirmative matters in avoidance of such allegations. Plaintiffs herein have not pointed out and we know of no rule of pleading that would

dispense with the necessity of a defensive pleading on the ground of judicial notice. Had the defendants in the actions in the district court filed answers' therein setting forth the matters which are alleged in the petition and affidavits filed in this court, and had there been an admission of the matters thus stated in such answers, either by reply or by demurrer, the district court would then have had before it the facts upon which we are now asked to determine that there was no liability on the part of the defendants in the district court, and that the district court should not, therefore, proceed to consider such actions. It is apparent, however, that, in any event, there was jurisdiction in the district court. If the facts and circumstances before the district court were such as to impose a liability upon the defendants therein, the district court had jurisdiction to proceed to hear the cases and to enter judgment. If, upon the trial of the facts, or if, because of the undisputed allegations of the pleadings, it was found that there was no liability upon the part of the defendants in such actions, this would not mean that the district court was without jurisdiction, but only that the district court would be in error if, notwithstanding such undisputed or proven facts, it undertook to hold the defendants liable. As stated in Ex parte Easton, supra, "mere matters of defense, whether going to oust the jurisdiction of the court or to establish the want of merits in the libelant's case, cannot be admitted under such a petition here to displace the right of the District Court to entertain suits."

We feel constrained to hold that, in this proceeding, we are confined to the record before the district court and are not at liberty to find facts either from the allegations of the pleadings or from the affidavits filed by the plaintiffs in this court; that there is not sufficient in the record which was before the district court to show that it did not have jurisdiction; and that, this being true, the writ of prohibition should not issue on the record now before us.

It is, therefore, ordered that the application of the plaintiffs herein for a writ of prohibition be, and the same is hereby, denied; that the order heretofore entered staying all proceedings in the cases in the district court which are here involved be, and the same is hereby, annulled; and that the costs of this action be, and the same are hereby, taxed to the plaintiffs herein.

Writ denied, and stay annulled.

ANDERSON, C. J., and all other Justices concur, except POWERS, J., who takes no part.