SCHMIDT and another, Appellants, v. DEPARTMENT OF
LOCAL AFFAIRS & DEVELOPMENT (Resource Develop-
ment), Respondent.

*No. 256. Argued April 9, 1968.—Decided May 7, 1968.*
(Also reported in 158 N. W. 2d 306.)

48

50

For the appellants there were briefs by *Quarles, Herriott, Clemons, Teschner & Noelke,* attorneys, and *L. C. Hammond, Jr.,* and *George K. Whyte, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Hammond.*

For the respondent the cause was argued by *William F. Eich,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, J. This appeal presents three issues for determination:

1. Does sec. 66.016 (1) (a) and (b), Stats., constitute an invalid delegation of legislative power to the director?

2. Do the appellants have standing to attack the constitutionality of secs. 66.016 (2) or 66.014 (9) (e) 3?

3. Did the director act in excess of his authority by stating that the town of Salem had no "dominant" community center?

Sec. 66.016, Stats., states:

**"Standards to be applied by the director.** (1) The director may approve for referendum only those proposed incorporations which meet the following requirements:

"(a) *Characteristics of territory.* The entire territory of the proposed village or city shall be reasonably homogeneous and compact, taking into consideration natural boundaries, natural drainage basin, soil conditions, present and potential transportation facilities, previous political boundaries, boundaries of school districts, shopping and social customs. An isolated municipality shall have a reasonably developed community center, including some or all of such features as retail stores, churches, post office, telephone exchange and similar centers of community activity.

"(b) *Territory beyond the core.* The territory beyond the most densely populated square mile specified in s. 66.015 shall have in an isolated municipality an average of more than 30 housing units per quarter section or an assessed value, as defined in s. 66.021 (1) (b) for real estate tax purposes, more than 25 per cent of which is

attributable to existing or potential mercantile, manufacturing or public utility uses; but the director may waive these requirements to the extent that water, terrain or geography prevents such development. Such territory in a metropolitan municipality shall have the potential for residential or other land use development on a substantial scale within the next 3 years.

"(2) In addition to complying with each of the applicable standards set forth in sub. (1) and s. 66.015, any proposed incorporation in order to be approved for referendum must be in the public interest as determined by the director upon consideration of the following:

"(a) *Tax revenue.* The present and potential sources of tax revenue appear sufficient to defray the anticipated cost of governmental services at a local tax rate which compares favorably with the tax rate in a similar area for the same level of services.

"(b) *Level of services.* The level of governmental services desired or needed by the residents of the territory compared to the level of services offered by the proposed village or city and the level available from a contiguous municipality which files a certified copy of a resolution as provided in s. 66.014 (6).

"(c) *Impact on the remainder of the town.* The impact, financial and otherwise, upon the remainder of the town from which the territory is to be incorporated.

"(d) *Impact on the metropolitan community.* The effect upon the future rendering of governmental services both inside the territory proposed for incorporation and elsewhere within the metropolitan community. There shall be an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community."

Sec. 66.014 (9), Stats., states in part:

"(9) FUNCTION OF THE DIRECTOR. (a) Upon receipt of the petition from the circuit court the director shall make such investigation as may be necessary to apply the standards under s. 66.016.

". . .

"(e) The determination of the director made in accordance with the standards under ss. 66.015, 66.016 and 66.021 (11) (c) shall be either:

"1. The petition as submitted shall be dismissed;

"2. The petition as submitted shall be granted and an incorporation referendum held;

"3. The petition as submitted shall be dismissed with a recommendation that a new petition be submitted to include more or less territory as specified in the director's findings and determination."

The introductory sentence of sec. 66.016 (1), Stats., provides that "[t]he *director may approve* for referendum *only* those proposed incorporations which meet the following requirements." (Emphasis supplied.) Appellants contend the use of the word "may" rather than "shall" vests the director with complete discretion to dismiss the petition regardless of whether or not it meets the requirements that follow. The trial court, however, construed the term as "shall."

We agree with the trial court's construction. While generally the word "may" in a statute will be construed as permissive, it will not be so construed where a different construction is demanded by the statute in order to carry out the intent of the legislature. *Wauwatosa v. Milwaukee County* (1963), 22 Wis. 2d 184, 125 N. W. 2d 386. In the statute under consideration the term "may" is followed by the restrictive word "only." Because it is followed by the limiting word "only," the context is "may only" which creates a restriction on the director. To say that the director has absolute discretion to deny any petition simply because he "may" not grant those which fail to meet the requirements is not a reasonable construction to place on the statute and is reading the word "may" out of its statutory context. While the statute may give to the director some discretion, it does not give him authority to reject a petition arbitrarily, capriciously or without reason.

The appellants next urge that sec. 66.016 (1) (a) and (b), Stats., does not provide definite standards and consequently vests an unconstitutional degree of legislative authority in the director. The appellants place strong

reliance upon the case of *In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 67 N. W. 1033, which invalidated an incorporation statute. The statute considered in that case provided for a delegation to the circuit court of the power to determine whether "the lands embraced in such territory or any part thereof ought justly to be included in the proposed village" and whether "the interest of the inhabitants will be promoted by such incorporation." Sec. 861, Stats. of 1878. The statute further provided that the court could enlarge or diminish the boundaries "as justice may require."

This court held the statute constituted an unlawful delegation of legislative power to the judiciary:

"The sum and substance of the law is this: Villages may be incorporated *if the circuit court thinks best.* This amounts to nothing more nor less than the vesting in the circuit court of the powers of a third house of the legislature, which must be exercised in the affirmative before a village can exist. The legislature has passed the law, the governor has signed it, and it has gone on the statute book, but the circuit judge in every case must add his concurrence before it is operative. The question as to whether incorporation is for the best interest of the community in any case is emphatically a question of public policy and statecraft, not in any sense a judicial question; and in attempting to submit that question to the decision of the circuit court the legislature has undoubtedly done that which the constitution forbids. . . .

"That part of the section, also, which places the whole question of the boundaries of the proposed village under the control of the court is equally objectionable. This also vests in the court, without appeal, the decision of the entire question as to what territory, and consequently what people, shall comprise the new village. Here, again, the court must decide the question of political expediency, which is very plainly a question to be decided by the legislative branch of the government alone." *In re Incorporation of Village of North Milwaukee, supra,* at page 624.

Recently this court had occasion to consider the same type question as involved in *North Milwaukee.* In the

case of *In re City of Beloit* (1968), 37 Wis. 2d 637, 155 N. W. 2d 633, the court held unconstitutional sec. 66.021 (11) (b), Stats., dealing with annexations as an unauthorized delegation of legislative power to the judiciary. Sec. 66.021 (11) (b) provided that the circuit court determine whether or not the annexation was in the public interest. In finding what was the "public interest" the circuit court wa's limited to considering the availability of government service and "the shape of the proposed annexation and the homogeneity of the territory with the annexing village or city and any other contiguous village or city." Sec. 66.021 (11) (c) 2. The court, however, did not find this a definite enough standard to sustain the validity of the section.

The court, in the *Beloit Case,* page 644, sets forth the criteria governing what will constitute an invalid delegation to the judiciary:

"What is 'desirable' or 'advisable' or 'ought to be' is a question of policy, not a question of fact. What is 'necessary' or what is 'in the best interest' is not a fact and its determination by the judiciary is an exercise of legislative power when each involves political considerations and reasons why there should or should not be an annexation. This is the general and universal rule which sharply draws the differentiating line between legislative power and judicial power and by which the validity of the delegation of functions to the judiciary by the legislature is determined."

The *North Milwaukee Case* and the *Beloit Case* must be distinguished from the instant action on two grounds. First, the provisions of sec. 66.016 (1) (a), Stats., are not as broad as the provisions under consideration in either the *Beloit* or *North Milwaukee Cases.* Sec. 66.016 (1) (a) directs and circumscribes the director far more specifically as to what to consider in making his determinations as to reasonable homogeneity and whether there is a reasonably developed community center. The director is to take into consideration "natural boundaries, natural

drainage basin, soil conditions, present and potential transportation facilities, previous political boundaries, boundaries of school districts, shopping and social customs." Further, the statute provides that if the municipality be isolated it shall have a "reasonably developed community center, including some or all of such features as retail stores, churches, post office, telephone exchange and similar centers of community activity."

These provisions simply do not involve the same type of policy decision required when a body must determine what is "in the public interest" without any guideline to delimit the meaning of the term "public interest."

Second, it must be recognized that in the *North Milwaukee Case* and in the *Beloit Case* the court was dealing with the legislative delegation of legislative power to the judiciary. While the "standards" delegated in the *North Milwaukee Case* would probably be invalid if delegated to a state administrative agency, this is not so with regard to the standards set forth in the *Beloit Case*. The court in *Beloit* specifically spoke of delegation to the judiciary, page 643:

"We reach the same conclusion as did the trial court but with less alacrity and confidence. But we hasten to add that in this day of restless technical and social change this court is alert to the necessity of guarding against a well-meaning fusion of judicial and legislative power."

We are dealing here not with a delegation of legislative power to the judiciary but with a delegation of that power to an administrative agency or administrative director. The legislative agency or director is, in fact, an arm or agent of the legislature itself. The very existence of the administrative agency or director is dependent upon the will of the legislature; its or his powers, duties and scope of authority are fixed and circumscribed by the legislature and subject to legislative change. An ad-

ministrative agency does not stand on the same footing as a court when considering the doctrine of separation of powers. An administrative agency is subject to more rigid control by the legislature and judicial review of its legislative authority and the manner in which that authority is exercised. Mr. Justice ROSENBERRY notes this in his excellent discussion of the delegation of legislative authority to administrative agencies in *State ex rel. Wisconsin Inspection Bureau v. Whitman* (1928), 196 Wis. 472, 507, 508, 220 N. W. 929:

"As was pointed out by Mr. Dicey, there will remain two checks upon the abuse of power by administrative agencies. In the first place, every such agency must conform precisely to the statute which grants the power; secondly, such delegated powers must be exercised in a spirit of judicial fairness and equity and not oppressively and unreasonably.

"The doors of the courts of this country will always stand open to any citizen complaining that he has been deprived of his constitutional rights, no matter under what form of law the deprivation has been worked. The emergence of administrative agencies will not impair or destroy the checks and balances of the constitution. To these two may be added a third check—one which seems to us is frequently overlooked,—and that is that all of these administrative agencies are the creatures of the legislature and are responsible to it. Consequently the legislature may withdraw powers which have been granted, prescribe the procedure through which granted powers are to be exercised, and if necessary wipe out the agency entirely." [2]

The availability of safeguards is an entirely appropriate consideration and the lack of safeguards such as those described by Mr. Justice ROSENBERRY above must be balanced with a requirement of stricter legislative standards. In fact, Professor Davis in discussing the doctrine of delegation to administrative agencies, concludes that

---

[2] *Also*, the provisions of ch. 227, Stats., cannot be overlooked as a procedural safeguard.

the presence or absence of procedural safeguards should be the test of valid delegations:

"Decisions of other state courts line up all the way from one extreme to another, with the main attention in opinion writing given to the definiteness of the standards. Altogether, the batch of cases on delegation of zoning powers demonstrates that the law of delegation would be strengthened if the courts were to deemphasize the statutory standards and to emphasize the degree of procedural safeguards." 1 Davis, *Administrative Law Treatise*, p. 113, sec. 2.09.

What does or does not constitute an invalid delegation of authority by the legislature has been a litigious field since the recognition that our government could not efficiently operate without the administrator and administrative agency. Both in the state and federal government the trend has been liberalizing as to what will be considered an unconstitutional delegation of power. The federal government, with a vast intricate framework of agencies, has been the leader in the field. Professor Davis summarizes the United States Supreme Court's position thus:

". . . Much of the judicial talk about requirement of standards is contrary to the action the Supreme Court takes when delegations are made without standards. The vaguest of standards are held adequate, and various delegations without standards have been upheld. . . .

". . .
"In absence of palpable abuse or true congressional abdication, the non-delegation doctrine to which the Supreme Court has in the past often paid lip service is without practical force." 1 Davis, *Administrative Law Treatise*, pp. 75, 76, sec. 2.01.

The state courts have not been so liberal, but Wisconsin is in the forefront when it comes to recognition of the true nature of the delegation, or nondelegation, doctrine. Even as early as 1928, Mr. Justice ROSENBERRY, in *State ex rel. Wisconsin Inspection Bureau v. Whitman, supra,* recognized that what was being accomplished by

administrative agencies was legislative-lawmaking. Professor Davis has expressed high regard for Mr. Justice ROSENBERRY'S approach:

"Only occasionally does one encounter realism of the kind expressed by the Wisconsin court as early as 1928; 'It only leads to confusion and error to say that the power to fill up the details and promulgate rules and regulations is not legislative power.' Unfortunately the insight of the Wisconsin court and of a few other courts has had little effect; the old idea that filling up the details does not involve law-making persists." 1 Davis, *Administrative Law Treatise*, p. 102, sec. 2.07.

The test set forth by Mr. Justice ROSENBERRY follows:

"The power to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate,—is a power which is vested by our constitutions in the legislature and may not be delegated. When, however, the legislature has laid down these fundamentals of a law, it may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose, in the language of Chief Justice MARSHALL, 'to fill up the details'; in the language of Chief Justice TAFT, 'to make public regulations interpreting the statute and directing the details of its execution.' " *State ex rel. Wisconsin Inspection Bureau v. Whitman, supra,* pages 505, 506.[3]

By setting forth that the territory shall be reasonably homogeneous and compact, and requiring a reasonably developed community center, the legislature has enunciated its purpose and most certainly the listing of the

[3] *See also Milwaukee v. Ruplinger* (1914), 155 Wis. 391, 395, 145 N. W. 42; *Clam River Electric Co. v. Public Service Comm.* (1937), 225 Wis. 198, 274 N. W. 140; *Olson v. State Conservation Comm.* (1940), 235 Wis. 473, 293 N. W. 262; *Clintonville Transfer Line v. Public Service Comm.* (1945), 248 Wis. 59, 21 N. W. 2d 5. *Also, In re City of Beloit, supra,* and *Outagamie County v. Smith* (1968), 38 Wis. 2d 24, 155 N. W. 2d 639.

items to be considered can only help establish the standard.

"In determining whether or not the power granted by legislative act in a particular case to an administrative agency is of the kind which may be delegated, due regard must be paid to the nature and the subject matter with which the act deals." *State ex rel. Wisconsin Inspection Bureau v. Whitman, supra,* page 509.

The legislature should not be required to make specific provisions with regard to all of the items it felt necessary to be considered. Each incorporation will differ on its facts and the administrative director determines only whether these facts come within the legislative standards.

Under the test as set forth by Mr. Justice ROSENBERRY, the appellants' attack on the requirement of sub. (1) (b) of sec. 66.016, Stats., is without merit. Appellants argue that because the section calls for a finding as to the "potential" tax base it is too vague and vests too much discretion in the director. The section, however, calls only for a finding of fact to be made by the director. It involves little discretion on his part and no policy making. Neither does the provision that the director may waive the requirement with whim, caprice or even in his discretion. He may only do so if and only "to the extent that water, terrain or geography prevents such development."

The director dismissed the appellants' petition because it failed to meet the requirements of sec. 66.016 (1), Stats. The director was not then required to and did not determine whether the public interest standards set forth in sec. 66.016 (2) would be met by appellants' petition. The appellants, however, challenge the constitutionality of that subsection also. The appellants lack the required standing to do so.

"It is familiar Wisconsin law that a party may not urge the unconstitutionality of a statute upon a point not affecting his rights. *Milwaukee Boston Store Co. v. American Federation of Hosiery Workers* (1955), 269

Wis. 338, 359, 69 N. W. (2d) 762; *Pedrick v. First Nat. Bank of Ripon* (1954), 267 Wis. 436, 441, 66 N. W. (2d) 154. . . . we have heretofore insisted that a party must show that he has been injuriously affected by the application of a statute before he can attack it on the grounds of unconstitutionality. *Milwaukee v. Milwaukee Amusement, Inc.* (1964), 22 Wis. (2d) 240, 251, 125 N. W. (2d) 625; *Joint School Dist. v. Boyd* (1955), 270 Wis. 222, 226, 70 N. W. (2d) 630." *Scharping v. Johnson* (1966), 32 Wis. 2d 383, 145 N. W. 2d 691. *See also, Family Finance Corp. v. Sniadach* (1967), 37 Wis. 2d 163, 154 N. W. 2d 259.

It would be a violation of sound judicial policy for the court to probe the constitutionality of a statutory provision which is not brought directly in issue by the facts presented in the case at bar. *Democrat Printing* Co. v. *Zimmerman* (1944), 245 Wis. 406, 14 N. W. 2d 428.

"In *State ex rel. Rosenhein v. Frear* (1909), 138 Wis. 173, 176, 119 N. W. 894, it is said: 'Sound judicial policy precludes the court from considering the question of the constitutionality of a legislative act unless a decision respecting its validity is essential to the determination of some controversy calling for judicial solution.' See also *State ex rel. Ford Hopkins Co. v. Mayor* (1937), 226 Wis. 215, 228, 276 N. W. 311; *John F. Jelke Co. v. Beck* (1932), 208 Wis. 650, 660, 242 N. W. 576; *Hickman v. Wellauer* (1916), 163 Wis. 160, 165, 157 N. W. 767." *Democrat Printing Co. v. Zimmerman, supra,* pages 411, 412.

The foregoing rules are also applicable to the appellants' attack on sec. 66.014 (9) (e) 3, Stats. The appellants' petition was dismissed in accordance with sec. 66.014 (9) (e) 1.[4] Sec. 66.014 (9) (e) provides:

"(e) The determination of the director made in accordance with the standards under ss. 66.015, 66.016 and 66.021 (11) (c) shall be either:

---

[4] The director's language in dismissing the petition was: "Therefore, in accordance with the provisions of Section 66.014 (9) (e), Wisconsin Statutes, the petition as submitted shall be dismissed."

"1. The petition as submitted shall be dismissed;
"2. The petition as submitted shall be granted and an incorporation referendum held;
"3. The petition as submitted shall be dismissed with a recommendation that a new petition be submitted to include more or less territory as specified in the director's findings and determination."

The appellants have not been affected in any way by either sec. 66.016 (2), Stats., nor sec. 66.014 (9) (e) 3. Consequently, the court should confine itself to the consideration of the constitutionality of sec. 66.016 (1).

Sec. 66.016 (1) (a), Stats., requires that the territory of the proposed village "have a reasonably developed community center." The director made the following determination on this point:

"Analysis of data from a 1963 Origin-Destination Traffic Survey conducted by the Southeastern Wisconsin Regional Planning Commission reveals that there is no dominant community center in the area proposed to be incorporated which might serve as a focal point for the Town's social and business activities. While there are some such facilities in existence, such as two post offices, firehouses, grocery stores, taverns, service stations, and small retail stores; there are no banks, professional offices, medical facilities, pharmacies, or modern shopping centers.
". . .
"Considering, then, the characteristics of the territory, and upon finding that development in the area proposed to be incorporated is scattered, that the proposed boundaries are irregularly shaped, that it lies in two separate drainage areas, that it lies in two high school districts, that a full range of community facilities such as banks, medical services and modern shopping centers are not available within any part of the area that could be described as its community center, it is the opinion of the Director that the entire territory of the proposed village is not reasonably homogeneous and compact."

Appellants note that the director used the term "dominant" to describe the lack of a community center, i.e.,

"there is no dominant community center." They contend that the director has imposed his own standard and ignored the standard "reasonably developed community center" prescribed by the statute. Appellants hypothesize that if there is more than one developed center in the community the director may reject the petition on the basis that neither center is dominant.

Appellants' argument is amiss. It is placing too much emphasis on one word used by the director and no emphasis on the findings of the director. By assuming a hypothetical entirely unrelated to this case this argument accuses the director of a disregard of statutory standards. By using the word "dominant" the director obviously meant that there was no developed center. The sentence is qualified by stating "which might serve as a focal point for the Town's social and business activities." The next sentence of his findings further qualifies the director's use of the word "dominant." "While there are some such facilities . . . there are no banks, professional offices, medical facilities, pharmacies, or modern shopping centers." We conclude the director did make his determination within the statutory standards and not in excess of statutory authority.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.