IN RE PETITION FOR FOND DU LAC METROPOLITAN SEWERAGE DISTRICT: CITY OF FOND DU LAC, Appellant, v. MILLER and others, ELECTORS OF THE CITY AND TOWN OF FOND DU LAC, and another, Respondents.*

*No. 202. Argued March 7, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 225.)

---

* Motion for rehearing denied, with costs, on June 3, 1969.

324

326

For the appellant there was a brief and oral argument by *Henry B. Buslee,* city attorney.

For the respondents there was a brief by *St. Peter & Hauer,* attorneys, and *George M. St. Peter* and *Albert J. Hauer* of counsel, all of Fond du Lac, and oral argument by *George M. St. Peter.*

A brief *amicus curiae* was filed by *Jerry A. Edgar,* legal counsel, and *Jean G. Setterholm,* staff attorney, both of Madison, for the League of Wisconsin Municipalities.

HANLEY, J.   The following issues are presented on this appeal:

(1) Is the legislative authority contained in secs. 66.20 to 66.209, Stats., a lawful delegation of authority;

(2) Is the court's finding of necessity for the proposed work and the general outline of the proposed improvements supported by substantial evidence; and

(3) Did the trial court dispose of all objections to the formation of a district as justice and equity require?

*Is There a Lawful Delegation of Authority?*

The applicable standards for statutory construction in this area were recently enumerated in *In re City of Beloit* (1968), 37 Wis. 2d 637, 643, 155 N. W. 2d 633:

". . . in this day of restless technical and social change this court is alert to the necessity of guarding against a well-meaning fusion of judicial and legislative power. We start with the basic principles of constitutional law and statutory construction: (1) That the statute must be presumed to be valid and constitutional, 2 Sutherland, *Statutory Construction* (3d ed.), pp. 326, 327, sec. 4509; *A B C Auto Sales, Inc. v. Marcus* (1949), 255 Wis. 325, 38 N. W. 2d 708; *White House Milk Co. v. Reynolds* (1960), 12 Wis. 2d 143, 106 N. W. 2d 441; and (2) if a statute is open to more than one reasonable construction, the construction which will accomplish the legislative purpose and avoid unconstitutionality must be adopted. *Attorney General v. Eau Claire* (1875), 37 Wis. 400;

*State ex rel. Harvey v. Morgan* (1966), 30 Wis. 2d 1, 139 N. W. 2d 585; *Gelencser v. Industrial Comm.* (1966), 31 Wis. 2d 62, 141 N. W. 2d 898. Of course, the court cannot give a construction which is unreasonable or overlook language in order to sustain legislation, but likewise the construction need not be the most natural or obvious. *See State ex rel. Reynolds v. Sande* (1931), 205 Wis. 495, 238 N. W. 504."

In the *Beloit Case* this court held that sec. 66.021 (the annexation statute), Stats. 1965, was unconstitutional as an unauthorized delegation of legislative power to the judiciary. The problem in that case was that, under the annexation statute, the circuit court had the duty of determining whether a particular annexation was "in the public interest." This court held that such a determination was not a judicial question, but a question of public policy and statecraft.

"There is no question that if we consider public interest as an unrestricted term or concept, as did the trial court, the determination of what political and economic expediency constitute public interest is a legislative function. What is 'desirable,' or 'advisable' or 'ought to be' is a question of policy, not a question of fact. What is 'necessary,' or what is 'in the best interest' is not a fact and its determination by the judiciary is an exercise of legislative power when each involves political considerations and reasons why there should or should not be an annexation. This is the general and universal rule which sharply draws the differentiating line between legislative power and judicial power and by which the validity of the delegation of functions to the judiciary by the legislature is determined. . . ." *In re City of Beloit, supra,* at page 644.

This court has discussed the thin line between a proper and improper delegation of legislative authority on other occasions.

". . . Does the law before us go into operation upon the happening of a certain state of facts to be determined by the circuit court, or does it authorize and require the

court to go further, and not only determine facts, but pass its judgment upon questions of legislative discretion? If the first branch of this question can be answered in the affirmative and the latter branch in the negative, then the law must be sustained, because the ascertainment and determination of questions of fact is clearly an exercise of purely judicial power. If, on the other hand, the latter branch of the question must be answered in the affirmative, then the law cannot be sustained, because such power cannot be delegated to the circuit court under our constitution." *In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 622, 67 N. W. 1033. *See also, Scharping v. Johnson* (1966), 32 Wis. 2d 383, 145 N. W. 2d 691.

Now the statute involved in this case can be considered.

"**66.202 Sewerage district; judgment.** (1) Upon the hearing if it shall appear that the purposes of sections 66.20 to 66.209 will be *best* served by the creation of a district, the court shall, after disposing of all objections as justice and equity require, by its findings, duly entered of record, adjudicate all questions of jurisdiction, *establish the boundaries* and declare the district organized and give it a corporate name, . . .

"(2) If the court finds that the territory set out in the petition *should not be* incorporated into a district, it shall dismiss said proceedings and tax the cost against the signers of the petition. . . ." (Emphasis supplied.)

Clearly the statute involved here purports to delegate to the county court a question which is not factual. What is "best" or "should not be" are political questions and not questions of fact.

Another apparent problem with the statute in question involves the delegation of final authority to set the boundary lines for the sewerage district. In discussing a similar problem with an incorporation statute this court said:

"That part of the section, also, which places the whole question of the boundaries of the proposed village under the control of the court is equally objectionable. . . . Here, again, the court must decide the question of politi-

cal expediency, which is very plainly a question to be decided by the legislative branch of the government alone." *In re Incorporation of Village of North Milwaukee, supra,* at page 624.

The trial court realized that sec. 66.202, Stats., appeared to violate the constitutional prohibition against the delegation of the legislative function, and he sought to interpret the statute so that only factual questions would be decided. Thus he concerned himself solely with determining whether the jurisdictional requirements of sec. 66.201,[4] were met, and whether the allegations of the petition were established.

The trial court determined that all procedural jurisdictional requirements had been satisfied. He realized that he would be deciding a political question if he determined the "necessity" of the proposed district without any guidelines so he looked to sec. 66.20 (1), Stats.:

"(1) AUTHORIZED. Metropolitan sewerage districts may be created, governed and maintained as is in sections 66.20 to 66.209 provided, in contiguous territory containing two or more of any of the following municipalities: Any city or village in its entirety or any township or part thereof, located in one or more counties, when so situated that common outlet sewers or disposal plants will be conducive to the preservation of the public health, safety, comfort, convenience or welfare."

The trial court determined that the establishment of a sewerage commission would be beneficial to the public health, safety, comfort, convenience or welfare.

---

[4] To acquire jurisdiction under sec. 66.201 (2), Stats., the county court must be presented with a petition signed by the requisite number of voters, and the petition must set forth:

(a) The proposed name of the metropolitan sewerage district;

(b) The necessity for the proposed work;

(c) A general description of territory to be included in the proposed work; and

(d) A general outline of the proposed improvements.

Likewise the trial court felt he could not constitutionally determine whether a sewerage commission was the "best" solution to the problem. So he limited his inquiry to a determination of the good faith or reasonableness of the petition.

"When, as here, the court finds the allegations of the petition are established, *the petitioners* having selected a metropolitan sewerage district as a solution going to 'preservation of public health, safety, comfort, convenience or welfare' over other possible alternatives, the court cannot interject his opinion or judgment; the metropolitan district is one of a class of legislative creations for relief of the given situation. The judgment must follow as a matter of right. . . ." (Emphasis supplied.)

The trial court's attempt to sustain the constitutionality of the legislation is admirable, but his approach to the problem has resulted in the creation of a metropolitan sewerage commission even though no independent and unprejudiced party has passed on whether it is in the "best" interest of the area. We think this is a "nonjudicial" question and therefore must decline the opportunity to pass upon it.

The ultimate result of the trial court's approach to this problem would be that whenever an area is suffering from pollution five percent of the residents could impose a sewerage commission on the remainder of the area residents. Surely, this result is beyond legislative intent. Secs. 66.20 to 66.209, Stats., evidence a clear legislative intention to provide a metropolitan sewerage commission when it is in the "best" interest of the entire district to do so. Unfortunately, this is not a question which should have been delegated to a judicial body. For a proper method of resolving a similar problem, *see Schmidt v. Local Affairs & Development Dept.* (1968), 39 Wis. 2d 46, 158 N. W. 2d 306.

Having concluded that secs. 66.20 to 66.209, Stats., constitutes an unlawful delegation of legislative authority to the judiciary, it is not necessary to consider the remaining issues.

In addition to the real issue of law presented on this appeal there is an underlying problem called to our attention by the *amicus curiae* brief which has been filed by the League of Wisconsin Municipalities.

All of the major cities and most of the smaller cities and villages in Wisconsin are surrounded by fringe areas with population densities at or near the normal city level. Even though these fringe areas appear to be a part of the city, they are governed, taxed and provided services by the town. No populated fringe area may become part of the city until the majority of the electors and/or property owners in a particular area desire to annex. Cities and villages invariably offer a higher level of services to their citizens as compared to the surrounding town, and almost without exception it follows that costs of municipal services are correspondingly higher. The argument of the cities is that if the surrounding areas can attain the desired city services without becoming a part of the city, the growth of the cities is likely to be forever stifled, and the residents of metropolitan areas will be forever carrying an inequitable percentage of the tax load.

We can only acknowledge the hidden problem presented. It is not to be solved by judicial determination. The legislature has already stated that a metropolitan sewerage district is a legitimate solution to an areawide pollution problem. Thus the court is foreclosed from making any judgment as to how the formation of a sewerage district will affect the expansion of municipalities in the future.

We are aware that at least three metropolitan sewerage commissions have already been established. Since

the challenge to constitutionality raised here is not a claimed lack of legislative authority to provide for the creation of metropolitan sewerage districts, but rather to the method by which legislative power has been exercised, our mandate is limited to the facts of this case.

*By the Court.*——Judgment reversed.