WARREN COUNTY, IOWA, et al., Petitioners,

Donald Baldis et al., Intervenors-Petitioners,

v.

JUDGES OF the FIFTH JUDICIAL DISTRICT of Iowa, Respondents.

No. 58379.

Supreme Court of Iowa.

June 30, 1976.

F. H. Becker, of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for petitioners and intervenors.

Eugene Davis, of Davis, Scott & Grace, Des Moines, for respondents.

HARRIS, Justice.

Acting pursuant to authority given in § 602.59, The Code, the respondent judges of Iowa judicial election district 5A substituted one full-time magistrate for the three part-time magistrates formerly serving Warren County. This original action was brought in this court by six resident taxpayers and others challenging the constitutionality of § 602.59. The part-time magistrates who were replaced have intervened and are hereafter included in references to petitioners. We find the section is not unconstitutional and dismiss the petition.

Section 602.59 was enacted as a part of amendments to the unified trial court Act by the 65th General Assembly. Acts of the 65th G.A., 1974 Session, ch. 1085, § 13. The unified trial court Act, enacted by the 64th General Assembly, abolished all inferior courts and provided for one unified trial court in Iowa consisting of district court judges, district associate judges, and judicial magistrates. Acts of the 64th G.A., 1972 Second Session, ch. 1124, §§ 1, 2, 45.

Judicial magistrates are of two types, full-time and part-time. Their jurisdiction, salary, and functions vary accordingly, and are prescribed by statute.

Section 602.59 provides the chief judge of the district may, when a majority of the judges of a judicial election district vote favorably, order the substitution of a full-time magistrate for the incumbent part-time magistrates of a county. The power is given only for counties having three or more part-time magistrates. Such an action does not require public hearing, notice thereof, or factual findings by the judges.

Acting in conformance with § 602.59 and without hearing, notice, or factual findings, the respondent judges of judicial election district 5A, on March 27, 1975, ordered a substitution of magistrates in Warren County. They ordered one full-time magistrate be appointed to replace the three part-time magistrates who had formerly served the county. The full-time magistrate was thereafter appointed.

There is no claim of noncompliance with the statute. Petitioners' challenge is a direct assault on the constitutionality of the provision under which respondent judges acted.

Respondents raise threshold questions of the appropriateness of this petition and of petitioners' standing to proceed.

I. Petitioners did not pursue their challenge in district court but petitioned directly for supervisory review in this court. They contend Article V, § 4 of the Iowa Constitution supplies the necessary jurisdictional basis for bringing this original action. Article V, § 4, among other things, accords this court the " * * * power to issue all writs and process necessary to secure justice to parties and, * * * *exercise a supervisory and administrative control over all inferior Judicial tribunals throughout the State.*" (Emphasis added.)

Petitioners point to our opinion in *Re Judges of Cedar Rapids Municipal Court,* 256 Iowa 1135, 130 N.W.2d 553 (1964) in which, acting under this constitutional provision, we directed an end to objectionable practices of two municipal judges. Petitioners contend their challenge is so basic to the judicial system and is of such public importance as to merit relief under our supervisory jurisdiction.

Respondents believe *Judges of Cedar Rapids* is inapplicable. They believe the holding indicates our supervisory and administrative control can be invoked only by us. They point to other remedies, such as quo warranto or declaratory judgment, which petitioners might have pursued in district court. We think there is clear authority for us to entertain the petition. However we ordinarily are reluctant to exercise it where, as here, a remedy exists in district court.

Few cases delineate our supervisory authority. In *Hutchins v. City of Des Moines,* 176 Iowa 189, 157 N.W. 881 (1916) a challenge was raised to a statutory procedure allowing appointment by the supreme court of district court judges to a temporary condemnation court. We reversed for other reasons but found the appointment to be within our Article V, § 4, supervisory powers. We quoted with approval from Annot., 51 L.R.A. 33, 111:

"The superintending control is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them." 176 Iowa at 213, 157 N.W. at 889.

*Hutchins* was quoted extensively in *State ex rel. O'Connor v. District Court,* 219 Iowa 1165, 260 N.W. 73 (1935). In *O'Connor* a writ of prohibition was sought to prevent a district court from proceeding with numerous false arrest suits. On the basis of *Hutchins* we granted a writ.

*Judges of Cedar Rapids,* supra, dealt directly with our supervisory control over inferior courts. We said:

"The grant of the power of supervision and administration implies a duty to exercise it. In fact, the language of the constitution is mandatory that we must do so. And necessarily this power must apply to something beyond the ordinary appellate procedure and correction of errors at law, which are also provided for in Article V, Section 4, of the constitution. * * *." 256 Iowa at 1136, 130 N.W.2d at 554. See 20 Am.Jur.2d, Courts, § 113, p. 470.

We think we should exercise our authority in this case. Prompt resolution of the question is in the public interest. Our willingness to do so should not be taken as precedent for future actions. Where a remedy is provided in district court it should ordinarily be pursued before relief is sought here.

II. Respondents challenge petitioners' standing to assert this claim. This contention rests principally on the fact Warren County was one of the named petitioners. Our cases have uniformly held a county lacks the ability to mount a constitutional attack upon state legislative enactments. *Brunner v. Floyd County,* 226 Iowa 583, 584–585, 284 N.W. 814, 815 (1939); *C. Hewitt & Sons Co. v. Keller,* 223 Iowa 1372, 1377, 275 N.W. 94, 97 (1937); *Scott County v. Johnson,* 209 Iowa 213, 221, 222 N.W. 378, 381 (1928). See 16 C.J.S. Constitutional Law § 76(b), pp. 245–246. Because, as individuals and taxpayers, certain of the petitioners have sufficient standing, we can and do decline the request we reconsider the rule barring a county from such challenges.

Individual petitioners are also residents and taxpayers in Warren County and seek the relief as such. In *Vietnam Vets Against War v. Veterans M. Aud. Com'n,* 211 N.W.2d 333 (Iowa 1973), a challenge was attempted against a selection procedure prescribed by statute. Under the procedure there challenged commissioners for the City of Des Moines administered the Veterans Memorial Auditorium. Because the plaintiffs were not residents, property owners, or taxpayers of Des Moines they lacked standing. Under either the majority or minority view in *Vietnam Vets* petitioners have here alleged sufficient effect upon their rights to show standing. Cf. *State ex rel. Turner v. Iowa State Highway Com'n,* 186 N.W.2d 141, 147 (Iowa 1971).

III. There are two constitutional claims in petitioners' challenge. It is claimed

§ 602.59 unconstitutionally delegates legislative power to the judges in violation of Article III, § 1, Iowa Constitution. And it is claimed the provisions of §§ 602.50, 602.-51, and 602.59, The Code, abridge Article V, § 15 of the Iowa Constitution which provides vacancies in district courts shall be filled by the governor.

■ A. The claim of unconstitutional delegation is based on a familiar principle. A legislative function may be delegated to another branch of government only if adequate guidelines for its exercise accompany the delegation. *Elk Run Telephone Co. v. General Telephone Co.*, 160 N.W.2d 311, 317 (Iowa 1968). Legislative powers are delegated to that branch by the people. The rule is derived from the belief "a delegate cannot delegate." This is a translation of *delegatus non potest delegare.* Black's Law Dictionary 513 (Revised Fourth Ed. 1968).

■ It is clear a limited legislative function is delegated. Article V, § 1 of the Iowa Constitution places judicial power of the state in this court, district courts, and such other courts inferior to this court as the General Assembly may from time to time establish. Article V, § 10 authorizes the General Assembly to reorganize judicial districts and to increase or diminish the number of districts or the number of judges of district court. Article V, § 14 accords the General Assembly the responsibility for effectuating Article V and to provide a general system of practice in all courts in the state. Under these provisions the power to establish courts in this state is left solely to the legislature. *In re Sioux City v. Tri-Angle Club, Inc.*, 252 Iowa 44, 47, 105 N.W.2d 638, 640 (1960). See also 16 C.J.S. Constitutional Law §§ 133(a) and 139(a), pp. 555 and 634–635. The question then becomes whether the delegation is accompanied by adequate guidelines.

It should be noted the challenged statute does not authorize creation of a court by the judges. Neither does it authorize the judges to define or directly to alter the nature or jurisdiction of any existing court. All such matters are fully and carefully

prescribed by the legislature in chapter 602, The Code. The judges are given the limited power to determine which of two prescribed systems is to be operational. In either event the operation is to be conducted in the manner and to the extent the legislature has carefully specified.

But substitution does cause a significant change in the affected county's judicial system. Much depends on whether a full-time or part-time magistrate is named to serve: the qualifications of the magistrate under § 602.52, The Code; the jurisdiction of the court under § 602.60, The Code; appointment under §§ 602.51 and 602.50; retention in office under §§ 602.51 and 602.50; term of office under §§ 602.51 and 602.50; and salary under § 602.54, The Code.

■ It should also be noted that it is unimportant the delegation of legislative power is in this instance given the judicial rather than the executive branch. Although most cases on the question deal with delegations to the executive branch the prohibition applies equally to delegations to the judicial branch. See *City of Clinton v. Owners of Property, Etc.*, 191 N.W.2d 671, 677 (Iowa 1971); *State ex rel. Klise v. Town of Riverdale*, 244 Iowa 423, 57 N.W.2d 63 (1953); 16 C.J.S. Constitutional Law § 139(a), pp. 634–635; 16 Am.Jur.2d, Constitutional Law, § 255, p. 504.

We believe principles developed for testing the constitutionality of a delegation of legislative power to the executive branch may be applied in testing a delegation to the judicial branch. The principles have been long in their development and continue to evolve. A thoughtful review of our cases on the subject, and those of the federal courts, appears at 58 Iowa L.Rev. 974 (1973).

Our views, in common with those of most state courts, have called for much more stringent limitations on delegation than have been demanded of the federal congress by the United States Supreme Court. Long ago a delegation with similarities to that involved in the instant case was approved in *Field v. Clark*, 143 U.S. 649, 12

S.Ct. 495, 36 L.Ed. 294 (1891). Our cases on the subject have shared stages of development in common with those of the United States Supreme Court. According to Davis, Administrative Law Text (Third Ed. 1972) (hereafter Davis) § 2.01, pp. 26–27, the amount of authority appropriate for delegation has passed through four stages: (1) the findings-of-fact period", (2) the filling-up-the-details period", (3) the "standards period", and (4) the "current state of flux."

Our early cases were typical in asserting a delegation of legislative power was appropriate only to allow findings-of-fact. *Hubbell v. Higgins,* 148 Iowa 36, 126 N.W. 914 (1910). The view strictly limiting delegations to fact finding functions is widely discredited now, not by way of elimination of the concept, but by way of evolution to another stage. 58 Iowa L.Rev. at 980. But lingering deference has been paid the concept, especially in cases dealing with delegation to the judicial branch of government. *Clinton v. Owners of Property, supra,* 191 N.W.2d at 677; *Graham v. Worthington,* 259 Iowa 845, 857, 146 N.W.2d 626, 635 (1966); *Town of Clive v. Colby,* 255 Iowa 483, 491–492, 121 N.W.2d 115, 119 and 123 N.W.2d 331 (1963); *In re Community Sch. Dist. of Malvern,* 250 Iowa 1240, 98 N.W.2d 737 (1959); *Iowa-Illinois G. & Elec. Co. v. Ft. Dodge,* 248 Iowa 1201, 1217, 85 N.W.2d 28, 37 (1957).

While continuing to expand the view a delegation was proper only for fact finding functions, our holdings indicate we allow delegation for broader purposes. We shared with the federal courts the second or filling-up-the-details stage. See *Vilas v. Board of Assessment & Review,* 223 Iowa 604, 273 N.W. 338 (1937) and *State v. Manning,* 220 Iowa 525, 531, 259 N.W. 213, 217 (1935).

The filling-up-the-details test was soon expanded into the adequate-standards approach. *Davis,* § 2.01 at 27. Our own expansion was somewhat restrained:

"The Iowa court, rather than adopting the standards approach followed by the United States Supreme Court, enunciated a more restrictive analysis than involved a careful inquiry into whether the standards definitively described the character of the regulation 'intended to be imposed,' along with the parameters within which discretion could be utilized in carrying out that regulation. The results reached by the Iowa court were also different. While the United States Supreme Court began to permit delegations with almost meaningless guidelines, the Supreme Court of Iowa carefully scrutinized the statutes before them to insure that sufficient standards were actually present.

"However, the standards area was far from clearly defined, even in Iowa cases. While it appeared that the Iowa Supreme Court would be more permissive in situations in which the public interest was best served by a delegation, the court probably only recognized this possibility for the first time in [*Spurbeck v. Statton,* 252 Iowa 279, 290, 106 N.W.2d 660, 666 (1960)]. The standards approach resulted in further permissiveness toward delegations, although the court carefully inquired into the presence of standards. * * *." 58 Iowa L.Rev. at 986–987. See *Miller v. Schuster,* 227 Iowa 1005, 289 N.W. 702 (1940); *State v. Van Trump,* 224 Iowa 504, 507–508, 275 N.W. 569, 571 (1937).

It is apparent we are now in the fourth period, "the current state of flux." Relatively recent cases have continued to consider tests developed in prior stages. In *Lewis Consolidated Sch. Dist. v. Johnston,* 256 Iowa 236, 127 N.W.2d 118 (1964) an unsuccessful search was made for standards. They were sought among statutes *in pari materia* with the one there under challenge. Standards were not found so the challenged statute was held unconstitutional.

In *State v. Rivera,* 260 Iowa 320, 149 N.W.2d 127 (1967) we approved a delegation to the state highway commission. We denied a challenge to the constitutionality of the statute which accorded the commission the responsibility of selecting as well as marking no passing zones through regulation. Three grounds supported our approval. Standards appeared in statutes *in pari*

*materia* with the one challenged. In this matter of public safety there was a need for expertise. And there was a practical necessity of permitting the delegation.

In *Iron Workers Local No. 67 v. Hart,* 191 N.W.2d 758 (Iowa 1971) we upheld delegation to the civil rights commission allowing it to formulate a remedy to eliminate a discrimination practice. We noted standards need not be shown where " * * * the procedure established for the exercise of power furnishes adequate safeguards * * *." 191 N.W.2d at 772. This holding demonstrates standards and safeguards are not both required.

In *Grant v. Fritz,* 201 N.W.2d 188 (Iowa 1972) we approved a delegation given in § 524.305(3), The Code, 1971 to the superintendent of banking. That section accorded the superintendent the responsibility to determine: "The population density or other economic characteristics of the area primarily to be served by the proposed state bank afford reasonable promise of adequate support for the state bank."

We said: "[We have] recognized the modern tendency toward greater liberality in permitting grants of discretion to administrative officials as the complexity of governmental and economic conditions increases * * *. (Authorities)." 201 N.W.2d at 192.

■ From the foregoing history certain general principles appear to govern the claim a delegation of legislative power is unconstitutional. The four stages have each left their mark.

Standards may be found in statutes *in pari materia* with the one under challenge. Standards may be general or specific. Where they are specific a statute is less subject to challenge.

Safeguards are an important factor and may suffice even in the absence of detailed standards. But standards remain important. They may themselves constitute a safeguard. It is desirable, but not essential, to have both safeguards and standards; in some cases either will suffice. Standards are of more importance where the safeguards are in some way lacking.

We look to the practical necessities of public interest and will consider as an important factor the difficulty or impossibility of calling for the legislature to function in a given area.

■ With the foregoing interrelated principles in mind we turn to a consideration of the challenge in the instant case. The question is made close because there is no requirement for a notice or hearing before substitution is ordered. But this absence is not necessarily fatal. The absence of notice or hearing does not mean the judges will act unfairly in determining whether a substitution should be made. In *State v. Rivera, supra,* 260 Iowa at 325, 149 N.W.2d at 131 we quoted with approval from *Spurbeck v. Statton, supra,* 252 Iowa at 286, 106 N.W.2d at 664: " * * * It must be assumed that public officers will act fairly and impartially, and a statute will not be held unconstitutional because of a supposed possibility they will not do so. (Authority)."

A general right of review exists from actions of administrative officers under the administrative procedure act. § 17A.19, The Code. Acts of judicial officers may be reviewed in a number of ways, including quo warranto, rule 299 et seq., Rules of Civil Procedure, and certiorari, rule 306 et seq., R.C.P.

The statute challenged, § 602.59, is entitled "Substitution for apportionment." The apportionment referred to appears in § 602.57, The Code, which provides that the supreme court administrator apportion the number of part-time magistrates among the counties. Criteria for such apportionment are specified: (1) amount and types of judicial business handled, as appear from reports required under § 602.64, The Code, (2) population changes not reflected by the current census, (3) geographical area to be served, (4) pending case load before magistrates, and (5) the number and types of juvenile proceedings. We believe the legislature intended these same criteria to be

considered in determining whether to change to a full-time magistrate.

Section 602.61, The Code, provides for the chief judge to direct when and where magistrates shall hold court and to delegate the work load among them. The guidelines for the chief judge's actions under § 602.61 are likewise appropriate for determining when the substitution under § 602.59 is to be made: " *. * *. [T]o insure accessibility of judicial magistrates at all times throughout the district * * * ", and as " * * * necessary for the orderly administration of justice. * * *." § 602.61.

Section 602.63, The Code, authorizes the chief judge to combine the criminal dockets of magistrates and district associate judges if " * * * administration could be improved thereby. * * *." The over-all goal of the Rules of Civil Procedure is approved by the legislature. That goal is " * * * to provide for the administration of justice in an orderly, efficient and effective manner, in accordance with the highest standards of justice and judicial service." Rule 373, R.C.P. See rule 377, R.C.P. and §§ 684.18, 684.21, 602.11, The Code.

In deciding for a substitution under § 602.59, the judges, acting through the chief judge, are peculiarly attuned to the needs of judicial magistrates' systems. Their knowledge flows from activities in superintending the administration of justice in magistrate courts under the program specified in chapter 602. The legislature has in fact limited the scope of the judges' authority as much as practicalities allow. The judges can select only one of two possible alternatives, either of which is carefully, exactly, and thoroughly specified by the General Assembly.

We hold § 602.59, The Code, does not unconstitutionally delegate legislative powers to another branch of government. Petitioners' claim to the contrary is without merit.

■ B. Petitioners' other constitutional challenge does not present so close a question. Under Article V, § 15 of the Iowa Constitution " *. * * [v]acancies in the Supreme Court and District Court shall be filled by appointment by the Governor * * *." It is claimed magistrates, under the unified trial court Act, are judges of the District Court and hence provisions for appointment under §§ 602.50, 602.51, and 602.-59 offend against the constitutional requirement for gubernatorial appointment. We reject the contention.

Under § 602.50 part-time magistrates are appointed by the county judicial magistrate appointing commission. Full-time magistrates are appointed by the district judges of the judicial election district from persons nominated by the judicial magistrate nominating commission. Such appointments are made either initially under § 602.51 or upon substitution under § 602.59.

As noted the unified trial court Act abolished "[a]ll mayors' courts, justice of the peace courts, police courts, superior courts, and municipal courts * * * as of July 1, 1973. * * *." Acts of the 64th G.A., 1972 Second Session, ch. 1124, § 45. See § 602.36, The Code. The act also provided " * * * there shall be a unified trial court in the state of Iowa, known as 'Iowa District Court'. * * *." Acts of the 64th G.A., 1972 Second Session, ch. 1124, § 1. See § 602.1, The Code. Iowa of course had a district court from prior to statehood when it was codified in § 1566 et seq., The Code, 1851. See chapter 604, The Code, 1971.

Constitutional provision for gubernatorial appointment of district court judges antedated by many years the unified trial court Act which first created the position of judicial magistrates. When adopted, Article V, § 15 plainly did not contemplate gubernatorial appointment of judicial magistrates because there then were none. Petitioners' claim arises by reason of the later assimilation of lower courts into the district court.

Prior to adoption of the unified trial court Act inferior court officers were not appointed by the governor. There was nothing unconstitutional in this. But petitioners argue the methods of filling offices in magistrate level courts, though constitutional under the former system, were ren-

dered unconstitutional by the statutory change by which they were elevated into district court. Petitioners' claim is premised on defining judicial magistrates as district judges. We do not so define judicial magistrates notwithstanding the importance of their office and its judicial nature.

Certain qualifications of district court judges are required by the constitution. In creating and defining the office of judicial magistrate, the legislature chose in various ways not to establish similar qualifications, thereby indicating magistrates were not district court judges. For example district court judges must be members of the bar. Article V, § 18, Iowa Constitution. Part-time magistrates need not be members of the bar though full-time magistrates must. § 602.52, The Code. Terms of district court judges must be no less than six years. Article V, § 17, Iowa Constitution. Terms of part-time magistrates are two years. § 602.50(4). Terms of full-time magistrates are four years. § 602.51. District court judges must stand for retention at judicial election. Article V, § 17. Magistrates are retained essentially by reappointment. §§ 602.50, 602.51. Iowa district court judges possess the full jurisdiction of the Iowa district court. Article V, § 6, Iowa Constitution; § 602.4, The Code. Jurisdiction of full-time and part-time magistrates is limited under § 602.60, The Code.

The legislature has further indicated such distinction by contrasting statutes. District court judges receive an annual salary of $31,500. § 605.1, The Code; Acts of the 66th G.A., 1975 Session, ch. 2, § 1. Full-time magistrates receive $19,500 per year, while part-time magistrates receive $4800 annual salary. § 602.54, The Code. Judicial magistrates (and district associate judges) try all nonindictable offenses with appeal taken to district court judges. §§ 762.1, 762.43, The Code.

Various Code sections refer alternatively to district judges and judicial magistrates, implying a distinction between the two offices. §§ 356.33, 602.42, 602.51, 602.53, 602.-56, 602.59, 602.60, 602.63, 602.64, and 742.7, The Code.

The legislature was careful to delineate the confines of the office of judicial magistrates. It meticulously avoided according judicial magistrates the same status as district judges. The selection and procedure which does not provide for gubernatorial appointment is but another example of the distinction. A judicial magistrate " * *. * is a judicial officer who is called upon to perform discretionary and judgmental functions of great importance. * * *." *Krohn v. Judicial Magistrate Appointing Com'n,* 239 N.W.2d 562, 564 (Iowa 1976). He is not however a district judge. Since a magistrate is not a district judge there is no requirement appointments for the office be made by the governor.

Having found against petitioners upon their constitutional claims their petition for supervisory review must be and is hereby DISMISSED.

All Justices concur except LeGRAND, J., who dissents and RAWLINGS, J., who takes no part.

LeGRAND, Justice (dissenting).

Even after according § 602.59 the strong presumption of constitutionality to which it is entitled, I am unable to agree with that part of Division III of the majority opinion dealing with delegation of legislative power under Article III, § 1 of the Iowa Constitution. I find that delegation to be unconstitutional, and I therefore dissent.

I. I agree that legislative power may be delegated to another branch of government if adequate guidelines (or, in some cases, safeguards) for its exercise accompany the delegation. *See Iron Workers Local No. 67 v. Hart,* 191 N.W.2d 758, 772 (Iowa 1971); *Elk Run Telephone Company v. General Telephone Company,* 160 N.W.2d 311, 317 (Iowa 1968).

I disagree, however, with the majority's conclusion the authority granted to district judges under § 602.59 meets this constitutional test. The majority concedes this is true if § 602.59 is considered by itself. It then reaches out for support to §§ 602.57 and 602.61 as *pari materia* statutes whose

provisions, it is said, supply the guidelines lacking in § 602.59. But §§ 602.57 and 602.61 are not *pari materia* statutes at all. The former contains guidelines, indeed, but they are for the *allocation* of magistrates among the counties as the workload dictates, not for the manner magistrates should be selected. The latter (§ 602.61) is another housekeeping statute authorizing chief judges to use the available magistrates to the best advantage. Both of these statutes deal only with day-to-day internal operations, which courts have inherent power to regulate, even without legislative sanction. *See* 1 Sutherland Statutory Construction, 4th Ed. (Sands) 1972, § 4.06 pages 79–80.

II. The majority ignores the added scrutiny to which delegations of legislative power are subjected when authority is vested in the judiciary. The majority says this is "unimportant." The authorities are to the contrary.

This is well stated in *Westring v. James,* 71 Wis.2d 462, 238 N.W.2d 695, 698–699 (1976) as follows:

"[*Schmidt v. Department of Local Affairs and Development,* 39 Wis.2d 46, 158 N.W.2d 306] emphasizes the fact that legislative powers which may be delegated to the courts are very limited. * * * The courts cannot be delegated the legislative responsibility of determining what is 'in the public interest' in respect to the creation of municipalities."

In *Westring* the court was referring to the following statements from *Schmidt v. Department of Resource Development,* 39 Wis.2d 46, 158 N.W.2d 306, 311–313 (1968) (quoting from a prior Wisconsin decision):

"What is 'desirable' or 'advisable' or 'ought to be' is a question of policy, not a question of fact. What is 'necessary' or what is 'in the best interest' is not a fact and its determination by the judiciary is an exercise of legislative power when each involves political considerations and reasons why there should or should not be an annexation. * * * *"

*     *     *     *     *     *

"We are dealing here not with a delegation of legislative power to the judiciary but with a delegation of that power to an administrative agency or administrative director. The legislative agency or director is, in fact, an arm or agent of the legislature itself. The very existence of the administrative agency or director is dependent upon the will of the legislature; its or his powers, duties and scope of authority are fixed and circumscribed by the legislature and subject to legislative change. *An administrative agency does not stand on the same footing as a court when considering the doctrine of separation of powers.* An administrative agency is subject to more rigid control by the legislature and judicial review of its legislative authority and the manner in which that authority is exercised. * * * *"

"* * * *

"The power to declare whether or not there shall be a law; to. determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate—is a power which is vested by our Constitution in the legislature and may not be delegated. * * *" (Emphasis added.)

Other states, too, emphasize this necessity for more strict construction when legislative power is delegated to the judiciary.

In *Copeland v. Kansas State Board of Examiners in Optometry,* 213 Kan. 741, 518 P.2d 377, 380 (1974), the court said:

"The legislature may impose a function upon the courts that is clearly judicial, but by reason of the separation of powers doctrine, the legislature cannot impose a legislative function upon the judiciary."

The same thought was expressed this way in *Galloway v. Truesdell,* 83 Nev. 13, 422 P.2d 237, 244–246 (1967):

"Generally, the legislature may not confer or impose powers non-judicial in character upon the judiciary.

"* * * *

"Our Constitution, even though being a 'living thing' and flexible still has limitations upon the powers that the legislature

can grant to a District Court. As was pointed out above, non-judicial functions cannot be imposed upon courts and judges unless expressly stated in the Constitution. * * * "

See also In Re Fond du Lac Metropolitan District, 42 Wis.2d 323, 166 N.W.2d 225, 227–228 (1969).

Our own cases also recognize this distinction. In Iowa-Illinois Gas and Electric Co. v. Fort Dodge, 248 Iowa 1201, 1216–1217, 85 N.W.2d 28, 37 (1957) we said:

"The Constitution of Iowa, like other American state constitutions, effects a complete separation of legislative, executive and judicial powers. It has been so many times recognized and declared that regulation of public utility rates is a legislative function, that this court will not dwell upon the matter in this opinion * * * It should suffice to mention at this time that while the legislative body may create a public utilities commission and delegate legislative powers to it, subject to standards to be provided by the legislature, and may likewise delegate such legislative powers to municipal corporations, such delegation cannot be made to the courts even by express legislative enactment. Citations." (Emphasis supplied.)

See also Graham v. Worthington, 259 Iowa 845, 857, 146 N.W.2d 626, 635 (1966), where the powers the legislature may delegate to a judicial body were limited to procedures, mechanics, and factfinding process with reasonably proper guides and standards.

In State of Iowa ex rel. Klise v. Town of Riverdale, 244 Iowa 423, 436, 57 N.W.2d 63, 70 (1953) we said:

"What is desirable is not a question of fact that can be judicially determined. It is a question of policy or public interest exercisable by the legislature alone. * * No one knows what the legislature meant by its requirement of desirability. It probably meant the court was to decide what would best promote or be conducive to the public good. Plainly this is legislation. The legislature has been entrusted with the power to pass laws for the public good. It cannot delegate to the courts, as a condition to the laws taking effect, the choice of determining whether the law will have a salutary effect. * * * "

Later, at 24 Iowa 441, 57 N.W.2d at 73, the Klise opinion contains this:

"No case is cited that goes so far as to allow annexation if the court felt it 'desirable.' Such a requirement as a determination of desirability leaves the court free to first formulate all of the conditions precedent to annexation and then to find if they exist. This is a delegation of unlimited power in the courts to determine whether property shall be annexed or not and hence the statute is unconstitutional."

In an earlier case, Denny v. Des Moines County, 143 Iowa 466, 473–474, 121 N.W. 1066, 1069 (1909), this court said:

"In other states statutes providing for proceedings in court with reference to a creation of a municipal corporation, or the extension of its limits, have frequently been considered by the courts, with the general conclusion, supported by the great weight of authority, that if the proceeding involves the determination of a legislative question, or the exercise of administrative powers, the statute is unconstitutional, and that such statutes can be upheld only where they leave to the courts the determination of questions of fact, as distinguished from the exercise of a general discretion involving the public interest."

III. Applying the foregoing principles to the present case, I find the delegation of power under § 602.59 constitutionally offensive. As the majority points out, the authority that statute delegates to the district judges allows them to work substantial and material changes in the judicial system– in personnel, jurisdiction, manner of appointing magistrates, term of office, and salary.

Surely the determination of such matters is legislative. If delegable at all, the power given the judges over these vital policy questions must be limited to well-defined factfinding under adequate guidelines.

Here, on the contrary, the delegation is carte blanche. It may be exercised at will. Then, at a later date, the judges may order a reversion to the original system if that seems "desirable." *See* § 602.59(5). This is a delegation of unfettered power which allows the district judges to decide what is advisable, or desirable, or necessary. As the authorities heretofore cited demonstrate, these are policy decisions. They are not facts properly determinable by judicial bodies. In addition to the authorities cited in Division II, *see Lewis Consolidated School District v. Johnston,* 256 Iowa 236, 248–249, 127 N.W.2d 118, 126 (1964); *State v. Van Trump,* 224 Iowa 504, 508–509, 275 N.W. 569, 572 (1937); 1 Am.Jur.2d, Administrative Law, § 108, pages 907–908 (1962).

Today's decision goes far beyond any previous announcement of this court. It approves—for the first time—a delegation of legislative power without *either* guidelines or safeguards. I have already discussed the absence of guidelines. As to safeguards, I simply point out there is no provision for notice, hearing, or judicial review. This is vividly illustrated by the present case when plaintiffs were forced to invoke the original jurisdiction of this court—a rare remedy—to test the statute.

It is probably unnecessary to add I would hold § 602.59 to be an unconstitutional delegation of legislative power.